AINSLIE and wife vs. THE MAYOR, &c. OF NEW-YORK.

Where an action of ejectment is brought against the actual occupants of the premises, and a judgment is recovered therein against the defendants, and an action of trespass is subsequently brought, by the plaintiffs in the ejectment suit, against the persons under whom such occupants held the premises, for the recovery of the mesne profits, such plaintiffs, to entitle themselves to recover in the latter action, must show, 1st. That they had, at the time the trespasses mentioned in the decla-

Ainslie v. The Mayor, &c. of New-York.

ration were committed, the actual possession of the premises, or a title thereto; 2d. That the defendants entered upon the possession of the plaintiffs, and expelled them, and kept them out of possession; 3d. That the defendants, by their agents, or tenants, received the rents, issues and profits while the plaintiffs were kept out of possession; 4th. That the plaintiffs had, before the commencement of the action for mesne profits, re-entered upon the premises, and regained possession thereof.

And if the plaintiffs prove all these facts, and thus show a right to recover, they can only be allowed to recover the rents and profits of such part of the premises as is proved to have been held by the defendants' authority; and for the time during which they were so held, and the value thereof.

If the evidence does not establish each of these facts, the plaintiffs should be non-suited.

The judgment record in an action of ejectment against the actual occupants, is no evidence of the plaintiff's title or possession, in an action for mesne profits, brought against the persons of whom such occupants held the premises; where such persons do not claim under the defendants in the ejectment suit.

Such a record is no evidence against any one, other than the defendants named therein, or persons claiming under them by title accruing after the commencement of the ejectment suit.

The action of ejectment, as now used, is created by statute, and is to have the effect which is declared by statute, and no other.

Formerly, the action of ejectment was a mere possessory action, and concluded no one, either as to the title, or the possession, except as to the time between the day of the demise and the recovery. Even the party against whom the judgment was rendered was at liberty to bring a new action, and again litigate as to the possession, as often as he pleased.

But by the revised statutes, a judgment in an action of ejectment, unless a new trial be granted, concludes the parties to the action, and all persons claiming under them by a title accruing after the commencement of the suit.

The only difference between prima facie, and conclusive, evidence is, that the former may, and the latter cannot, be contradicted.

The fact that persons who are not parties to an ejectment suit, undertake the defence of such suit, and fail therein, will not furnish the slightest evidence of the plaintiff's title, or possession, in an action against such persons for mesne profits.

In an action of trespass for mesne profits, the plaintiff is entitled to recover damages from the time of the demise as laid in the declaration in the ejectment suit, although a period of more than six years be covered; provided the defendant has not pleaded the statute of limitations.

THE plaintiffs having recovered a judgment in ejectment against the actual occupants of the premises in question, brought this suit for mesne profits, against the defendants, as the parties of whom the occupant held. The facts are set forth, with particularity, in the opinion of the court.

*T. Sedgwick,* for the plaintiffs. The evidence shows that the defendants claimed title to the premises ; that their lessees were in the occupation thereof, or some part thereof; and that the defendants assumed the defence of the ejectment suit. These facts being proved, the judgment in the ejectment suit became conclusive evidence of the right of the plaintiffs to recover against the defendants in this suit; or at least *prima facie* evidence. (*Hunter* v. *Butts,* 3 *Camp. Rep.* 455. *Chisac* v. *Reinicker,* 11 *Wheat.* 280. *Bacon* v. *Abeel,* 3 *John.* 481. *Jackson* v. *Randall,* 11 *Id.* 405. *Langdyke* v. *Burhans, Id.* 461. *Jackson* v. *Combs,* 7 *Cowen,* 36.) As to the amount of the damages. This being an action of trespass, the jury would not be at liberty to give any thing in their discretion, beyond the actual annual value of the premises. But they could not give less than that value. To this should be added the costs in the ejectment suit. (*Goodtitle* v. *Tombs,* 3 *Wils.* 128. *Dewey* v. *Osborne,* 4 *Cowen,* 329. *Brown* v. *Galloway, Peters'* C. C. *Rep.* 292. *Aslin* v. *Barker,* 2 *Burr.* 665. *Bacon* v. *Abeel,* 3 *John. Rep.* 481.) The statute of limitations not having been pleaded, the plaintiffs are entitled to recover from the time of the ouster as laid in the declaration in the ejectment suit.

*Willis Hall,* for the defendants. Improper evidence was admitted on the part of the plaintiffs. 1. The testimony of Mr. Sedgwick should not have been received. The proceedings in the ejectment suit, and the acts of Messrs. Emmett & Cowdrey did not bind the defendants; who were not in any way connected with them by proof. 2. The declarations of the comptroller of the city of New-York, to the witness John Morrell, were improperly admitted. 3. The corporation received no proper notice of the ejectment suit; and never authorized the same to be defended. 4. All the testimony concerning what transpired in that suit was clearly irrelevant. The defendants were not shown to have been notified of that suit. (6 *Hill,* 335. 11 *Wheat.* 296, 297. 3 *Camp.* 455. 7 *Term Rep.* 112. 2 *Burr. Rep.* 668. 6 *Wend.* 534. 2 *John. Rep.* 369.) 5. The witness Morrell was improperly allowed to give parol

Ainslie *v.* The Mayor, &c. of New-York.

evidence of the lease or leases under which he held as tenant of the corporation.   6. The leases from Morrell, and Ainslie and wife, to the ferry company were improperly admitted in evidence.

The motion for a nonsuit should have been granted.   1. The plaintiffs showed no title to the lands in question, and no possession.   This was necessary, to enable them to recover.   (1 *John. Rep.* 511, 512.   *Id.* 133.   8 *Wend.* 587.)   2. No act which can be construed into an act of trespass was proved against the defendants.

The verdict ought to be set aside because of the excessiveness of the damages.

BY THE COURT.   This was an action of trespass, commenced of January term, 1845, and tried in April of that year, when a verdict was taken for the plaintiffs, for $2000, to be augmented or reduced by the circuit judge; subject to the opinion of the court on a case, with liberty to either party to turn the same into a bill of exceptions or special verdict.

The circuit judge afterwards gave judgment on the case so made, in favor of the plaintiffs, and increased the amount of the damages to $2040, and the cause is now brought before this court, on an appeal from the judgment given by the circuit judge.

The declaration contains three counts.   In the first count, the premises upon which the trespass is alleged to have been committed, is bounded on the north by the south side of Grand-street, in the village of Williamsburgh; on the east by a lot called "corporation lot," as laid down on a map made by Charles Loss; on the west by *high* water mark, in the East river, and on the south by a line twenty-five feet south of Grand-street, in the said village.

The premises described in the second count, are the same as in the first count, except that they are bounded by low, instead of high water mark, in the East river; and the premises described in the third count, are the same as those described in the two first counts, except that they extend into the East river so as to include a pier on the south side of Williamsburgh

ferry. It is alleged in each count of the declaration, that the defendants, on the first day of December, 1836, with force broke and entered into the said premises, and expelled the plaintiffs from their possession, and kept them so expelled from that day until the third Tuesday of July, in the year 1842, (about five years and six months,) and during that time, took the rents, issues and profits, being of the yearly value of $500. The defendants pleaded the general issue. The plaintiffs proved by Theodore Sedgwick, Esq. that they did, in January, 1836, commence an action of ejectment against John Morrell and Hiram Ross. The plaintiffs then called John Morrell, one of the defendants in the action of ejectment, who on his direct examination testified in substance that a declaration in an action of ejectment was served on him. That he took the declaration to the defendants' comptroller, who said he would take charge of it, and if the witness had not given notice of it, he would have rendered himself liable. The plaintiffs next read in evidence a certificate of D. D. Field, Esq. who acted as counsel for the plaintiffs on the trial of the said action of ejectment, which proved that Peter A. Cowdrey, Esq. appeared as counsel for the defendants in the action of ejectment and that he was counsel for the corporation of the city of New-York, and insisted on the trial that the said corporation was the owner of the premises, and set up a title in the corporation, based on a deed from Thomas Morrell to the corporation, dated the 3d day of August, 1805. And that he subsequently insisted that a part of the premises belonged to the state, and that the action should have been brought in the county of New-York. That after the evidence was closed and the counsel had summed up, the defendants' counsel requested the court to charge the jury that the land between high and low water mark belonged to the state. That he, the witness, was not confident as to the ground then taken as to the land between high and low water mark. He recollects that the deed above referred to purports to convey the land down to high water mark, and that no other paper title was set up on the part of the defendants in the action of ejectment. The plaintiffs then read the said

deed in evidence. One lot therein mentioned, is described as follows: "All that certain lot, piece or parcel of land, situate, lying and being at Bushwick aforesaid, at a place commonly called Morrell's point, on the south side of a new street or road immediately to be laid out and opened at Morrell's point, near the sassafras tree, where the old store house stood; beginning at high water mark and running easterly along the southerly line of the said street or road one hundred feet; thence running southerly at right angles to the distance of twenty-five feet; thence running parallel with the said road to the East river one hundred feet; and thence along the said river to the place of beginning, twenty-five feet. The said lot containing in breadth, in front and rear, at each end, twenty-five feet; and in length, on each side, *twenty-five feet*." The plaintiffs proved by Jeremiah Johnson, that he had known Williamsburgh above half a century, and been familiar with the shore in its natural state, before Grand-street was opened, or any docks or piers built. That high water mark at the foot of Grand-street, was about ten feet west of the westerly line of *Grand-street*. The plaintiffs offered in evidence the record of the judgment in the said action of ejectment. It was objected to by the defendants' counsel. The objection was overruled, and the record read in evidence. In the declaration set out in that record, the plaintiffs claimed an undivided half of the premises in question, as tenants in common with the children of Lucretia Morrell deceased, and John Morrell; and that the defendants, John Morrell and Hiram Ross, ejected the plaintiffs on the first day of December, 1836. The ejectment was tried on the second Monday in April, in the year 1842; when a verdict was found in favor of the plaintiffs for an undivided half of the premises in question, and the record of judgment was signed on the 24th day of May, 1842. Noah Waterbury, a witness on the part of the plaintiffs, testified that he was a member of the Williamsburgh ferry company. That the company had a lease from the defendants for the ferry from Grand-street in the village of Williamsburgh, to Grand-street in the city of New-York, from 1827 to 1842. The lease was given in evidence by the plain-

Ainslie *v.* The Mayor, &c. of New-York.

tiffs, and the property demised is therein described as follows: "All that ferry established at the foot of Grand-street in the city of New-York, over and across the East river to Morrell's point, where the boats now land, on Nassau Island, with all and singular the rights, members, profits and advantages and appurtenances thereof." The lease is dated on the 8th day of October, 1827, and was for the term of fifteen years and three months from the 1st day of February, then last past. The rent reserved, was for the first year and three months, $75; for the next seven years, $150 yearly, and for the last seven years, $250 a year, payable quarterly. The witness Noah Waterbury further testified, that the rent referred to in the lease was increased. The rent actually paid by the company was $430 per annum, under that lease. The pier and bulkhead forming the premises described in the declaration in this suit, were used for the purpose of the ferry, and the floats of the company. The floats were used for the ferry, and were attached to the piers on both sides of the slip, for the purpose of protecting their boats in coming in and going out. In October, 1841, a new lease of the ferry was granted by the defendants, which the plaintiffs read in evidence. The property thereby demised is described as follows: "All that ferry established, and to be established, from the foot of Grand-street in the city of New-York, over and across the East river, to the foot of Grand-street in Williamsburgh, where the boats now land, or to the foot of the street next to Grand-street, on the north or south thereof. And also, from the foot of Grand-street in the city of New-York, to the foot of south of 7th street, in the town of Williamsburgh, or the foot of the street next to south of 7th street, on the north or south thereof, with all and singular the rights, members, privileges, advantages, fixtures and appurtenances thereof belonging to the parties of the first part." The rent reserved was $6000, and payable quarterly. The lessees, were at their own expense, to provide good and sufficient bridges, floats, ferry accommodations and fixtures at each landing place of the said ferry, excepting a new bulkhead and pier at the foot of Grand-street in the city of New-York, which were to be built at the expense of the les-

sors in case the same should be deemed necessary.   The witness last mentioned, further testified, that upon the termination of the ejectment suit, the ferry association held of James Ainslie and John Morrell, part of the premises described in the declaration in this suit, and paid $500 per annum rent, for eight years. They also agreed to build a pier, to revert to the lessees at the end of their lease.   That the pier has been built, and cost $800. The counsel for the plaintiffs read that lease in evidence, which was objected to by the defendants' counsel, and the objection was overruled.   The lease is dated on the 26th day of April, 1842, which was after the verdict, and before the judgment in the action of ejectment, and was made by James Ainslie, one of the plaintiffs in the ejectment, and ·by John Morrell, one of the defendants in that suit.   The property demised by that lease, is described as follows : " All that certain piece and parcel of land, and land under water, situate, lying and being in the village of Williamsburgh, in the county of Kings, and state of New-York, commencing on the southerly side of Grand-street, twenty-five feet westerly from the northwesterly corner of a two story frame dwelling house lately occupied by Hiram Ross, and running thence southerly at right angles with Grand-street one hundred feet ; thence westerly on a line parallel with the southerly line of Grand-street, into the East river as far as the right of the parties of the first part does, or may, by any act of the legislature establishing a permanent water line for said village, extend ; thence northerly along said water line, one hundred feet, to a point where it would be intersected by the southerly line of Grand-street, if extended in that direction ; thence easterly along said last mentioned line, to the point and place of beginning.   And also, all and singular the tenements, docks, piers, bulkheads, hereditaments and appurtenances, with the rent, dockages, cranage and profits thereof, with all the rights ·and privileges thereunto belonging or in any wise apper- taining."   This lease was for the term of eight years, from the first day of May, 1842, reserving a rent of $500, payable quar- terly.   It contains a recital of the title under which the lessors profess to claim.

Robert Seeley, a witness for the plaintiffs, testified that he occupied a part of the premises described in the declaration in this suit, at a rent of $200 per annum. The counsel for the plaintiffs offered to read the lease in evidence, which was objected to by the defendants' counsel. The objection was overruled; and the lease read in evidence. The lease bears date on the 8th day of June, in the year 1842, and was for eight years from the first day of May then last past; and was made by John Morrell and James Ainslie to the said Robert Seeley, of "All that certain lot of ground, situate in the village of Williamsburgh aforesaid, on the southerly side of Grand-street, near the ferry; being twenty-five feet in width in front and rear, and one hundred feet in depth on each side; bounded northerly in front by Grand-street, easterly by a lot of ground marked 'corporation lot,' on Loss' map, filed in the clerk's office of said county, southerly by land of John Morrell, and westerly by ground leased to Noah Waterbury and others, with the appurtenances." It was agreed that the charter of the city of New-York might be referred to. The plaintiffs offered no other evidence, and the defendants' counsel moved for a nonsuit, on the ground that the plaintiffs had not shown any title to the premises in the declaration mentioned, nor to any part thereof; nor that the defendants had committed any trespass thereupon, or had ever been in possession thereof. Which motion was overruled, and the counsel for the defendants excepted.

Daniel Ewen, a witness for the defendants, testified that he was a corporation surveyor of the city of New-York; and on being shown the map of the corporation property at Williamsburgh, he said it was correct. It was agreed that the said map might be referred to. On being shown a map of the said property, he said it was substantially correct. That he made the survey for that map in 1842. Before 1827, the pier was as is indicated by the pink color. After that, it was filled out, and made to conform to the blue lines. The corporation have built a pier, or bulkhead, at the end of the premises described in the declaration in this cause. It appears on the map just shown to

Ainslie *v.* The Mayor, &c. of New-York.

him, and is marked in pencil, " addition to the pier made by the corporation since 1827, and recent bulkhead built by the corporation."

The plaintiffs, to entitle themselves to recover, were bound to show—

1. That they had, at the time the trespasses mentioned in the declaration were committed, the actual possession of the premises in question, or that they then had a title to the said premises. 2. That the defendants, by some person or persons acting for them, and by their authority, entered upon the possession of the plaintiffs, and expelled them, and kept them out of possession. 3. That the defendants, by their agents or tenants, received the rents, issues and profits of the premises, while the plaintiffs were kept out of possession. 4. That the plaintiffs had, before the commencement of this action, re-entered upon the said premises and regained possession thereof. (19 *Wend.* 507. 9 *John. Rep.* 61. 2 *John. Cas.* 27.) And, 5. If the plaintiffs had proved all the preceding facts, and thus shown a right to recover, they could only be allowed to recover the rents and profits of such part of the premises in question, as was proved to have been held by the defendants' authority, and for the time during which they were so held, and the value thereof. (*Arlin* v. *Parkin,* 2 *Burr. Rep.* 668. 2 *R. S.* 311. § 48.)

If the evidence above set forth did not establish each of the facts above stated, the plaintiffs ought to have been nonsuited. What evidence did the plaintiffs give of title to the premises in question, or any part of them? They offered no deed in evidence for the purpose of showing that they, or any person under whom they claim, had title prior to the time when the trespasses complained of are alleged to have been committed. What evidence did they give, that they had before, or at the time, the trespasses complained of were committed, the actual possession of the premises in question? None, whatever. No witness was called to prove that the plaintiffs, or any person under whom *they* claimed, had ever had the actual possession of the premises, at any time before *April,* 1841. Not content with

omitting to prove that they ever had possession, they called Noah Waterbury, and proved by him, that the ferry company, of which he was a member, had the undisturbed occupation of the pier mentioned in the third count of the declaration in this cause, from October, 1827, to February, 1842; and to prove who had possession before 1827, no evidence was given. The plaintiffs, therefore, in the opinion of the court, wholly failed to prove that they had title to, or possession of, the premises in question; and ought, for that cause, if for no other, to have been nonsuited. The plaintiffs were allowed, notwithstanding the objection of the counsel for the defendants, to read in evidence the record of a judgment in an action of ejectment. Although the plaintiffs' counsel admitted on the argument, that the record was not conclusive evidence of the plaintiffs' title or possession, as against the defendants in this suit; yet he was understood to insist, that the record was *prima facie* evidence against the defendants in this action, of every fact of which it was conclusive evidence against John Morrell and Hiram Ross, the defendants in the action of ejectment. Can this be so? That record is conclusive evidence of the plaintiffs' title and possession, as against the defendants therein named; but it has no force against any one else, except that which the legislature hath given to it. 2 *R. S.* 309, § 36, declares that such record shall be conclusive as to the title established in such action, upon the party against whom the same is rendered; and against all persons claiming from, through, or under such party, *by title accruing after the commencement of such action.* And the only difference between prima facie, and conclusive evidence, is understood to be, that the former may, and the latter cannot, be contradicted. Can this record, as against the defendants in this suit, be prima facie evidence of the plaintiffs' title or possession, so as to make it necessary for the defendants to give evidence to contradict the plaintiffs' title or possession? The action of ejectment, as now used, is created by statute, and is to have the effect which is declared by statute, and no other. Formerly, the action of ejectment was a mere possessory action, and concluded no one, either as to the title or posses-

sion, except as to the time between the day of the demise and the recovery. Even the party against whom the judgment was rendered was at liberty to bring a new action and again litigate as to the possession, as often as he pleased. But by the revised statutes, a judgment in an action of ejectment, unless a new trial be granted, concludes the parties to the action, and all persons claiming under them, by a title accruing *after* the commencement of the action. The defendants in this action do not claim under the defendants in the action of ejectment, and consequently, the record in the action of ejectment is *no* evidence against them, of the plaintiffs' title, or possession. The record is conclusive evidence against John Morrell and Hiram Ross, the defendants named therein, that on the first day of January in the year 1836, the plaintiffs had title to, or the actual possession of, one undivided half of the premises described in the declaration. But there is no law making that record prima facie evidence against any one, other than the defendants named therein, or persons claiming under them. The evidence that John Morrell gave the declaration in the action of ejectment to the defendants' comptroller, and that he promised to take care of it, and said that if he, John Morrell, had not given notice of the ejectment he would have been liable, did not furnish a presumption in favor of the plaintiffs' title, or possession. Nor did the evidence of what Peter A. Cowdrey ever said, and did, tend to show that the plaintiffs ever had title to, or possession of the said premises, or any part thereof. The record, therefore, in connection with the other evidence in the cause, ought not to have been read as evidence of the plaintiffs' title, or possession, at the time the trespass mentioned in the declaration was committed. Were it conceded that the defendants in this suit took on themselves the defence of the action of ejectment, and failed therein, it would not furnish the slightest evidence of the plaintiffs' title or possession, as against these defendants; because they may have had a perfect title, and the defendants in the ejectment may have admitted the plaintiffs' title in such a manner as to be concluded by the admission. And the defendants in this action are not to be prejudiced by

any thing which the defendants in the ejectment have said, or done. And as the plaintiffs failed to prove that they had title or possession when the trespass mentioned in the declaration was committed, they ought to have been nonsuited. Had the plaintiffs succeeded in showing that they had the title, or the actual possession, of the premises in question, when the trespass complained of was committed, it would then have been necessary for them to prove that the defendants, by some person or persons acting by their authority, entered upon the plaintiffs' possession and expelled them, and kept them out of possession, as is alleged in the declaration. But they gave no evidence of such trespass and expulsion by persons acting by the authority of the defendants. The record is conclusive evidence against John Morrell and Hiram Ross, that they entered upon the possession of the plaintiffs, and wrongfully withheld from them the possession of *some part* of the said premises; but it is difficult to imagine how that which is conclusive evidence against John Morrell and Hiram Ross, that they committed the trespass, can be prima facie evidence that the defendants in this action committed the same trespass. To charge the defendants for the acts of John Morrell and Hiram Ross, it was necessary for the plaintiffs to prove, otherwise than by the record, that John Morrell and Hiram Ross did commit the trespass complained of, and by the authority of the defendants. But the plaintiffs gave no such evidence. They did not prove that Hiram Ross ever entered on the premises in question, or had possession thereof for one moment. But they did prove that John Morrell was the lessee of the defendants, of the lot called "corporation lot," which is no part of the premises in question; and that he built a stoop which extended over that lot on to the east part of the premises in question, but they did not prove that in building that stoop he acted by the authority of the defendants, or ever paid to them one cent for the rent thereof. The plaintiffs did not prove that John Morrell ever had possession of any part of the premises in question, other than the land covered by the said stoop. But, on the contrary, the plaintiffs proved by Noah Waterbury, that the ferry company, of which

he was a member, from October, 1827, to February, 1842, used the pier mentioned in the declaration, and the bulkhead *not mentioned therein,* for the ferry and the floats of the company, and thereby the plaintiffs disproved the allegations in the record of the judgment in the action of ejectment, that John Morrell and Hiram Ross entered upon the possession of the pier, and withheld the same from the plaintiffs. The plaintiffs cannot in this action be entitled to recover for the use had of the pier by the ferry company, without showing that they, the plaintiffs, had the title to, or the possession of, the pier, and that the ferry company ousted them by the authority of the defendants. This the plaintiffs have not made an effort to prove. By the lease of 1827, made by the defendants to the ferry company, nothing but the ferry was demised; the pier is not mentioned therein. The rents, which the ferry company agreed to pay, and have paid, were for the ferry, and for that only. And to the ferry the defendants are entitled, by their charter, and the plaintiffs make no claim thereto. The plaintiffs did not prove that the defendants, by their agents, had ever received any of the rents and profits of any part of the premises in question. And what evidence did they give, that before the commencement of this action, they had re-entered upon the premises described in the declaration, and regained possession thereof? No legal evidence whatever has been given of that fact. If, with the record of the judgment in the action of ejectment against John Morrell and Hiram Ross, the plaintiffs had given in evidence a writ of possession issued on that judgment, and proved that by virtue thereof John Morrell and Hiram Ross had been turned out, and they, the plaintiffs, put into possession of any part of the premises in question, they would have shown by competent evidence, that they had lawfully regained possession of such part of the premises in question. (*Jackson* v. *Combs,* 7 *Cowen,* 36. *Chirac* v. *Reinicker,* 11 *Wheat.* 280.) But no writ of possession executed was offered in evidence; and without that, the record of judgment ought to have been excluded.

If the plaintiffs had proved a title, or prior possession, and

that the said John Morrell and Hiram Ross, as the agents of the defendants, have entered upon the possession of the plaintiffs, and kept them out, and received the rents and profits for the defendants, it would have been necessary for the plaintiffs to prove how long John Morrell and Hiram Ross had engaged the premises, and what was the value thereof. In the case of *Aslin* v. *Parkin*, (2 *Burr. Rep.* 668,) Lord Mansfield says, that " as to the length of time the tenant has occupied the premises, the judgment proves nothing ; nor as to the value. And, therefore, it was proved in this case, (and must be in all,) how long the defendants enjoyed the premises, and what the value was." And by 2 *R. S.* 311, § 48, it is declared that on the trial of an issue joined in the proceedings to recover the mesne profits, " The plaintiff shall be required to establish, and the defendant may controvert, the time when such defendant entered into possession of the premises ; the time during which he enjoyed the mesne profits thereof, and the value of such property." It has already been shown that there is no evidence in the case proving that Hiram Ross ever had possession of any part of the premises for a single day. Or, that John Morrell ever occupied any part of the premises in question, except the land covered by a stoop which he built. And no witness was called to prove the value of any part of the said premises ; nor was such value proved by any admissible evidence. The plaintiffs, for the double purpose of showing that they have regained possession, and proving the value of the premises, were allowed, although objection was made, to read in evidence the two leases before mentioned, and made by James Ainslie, one of the plaintiffs, and John Morrell, one of the defendants. These leases were not admissible evidence for any purpose. They were no better evidence that James Ainslie had regained possession, or of the yearly value of the premises demised, than the declarations of James Ainslie or John Morrell would have been. If, to show that he has regained possession, or to show what was the value of the premises in question, from 1836 to 1842, the plaintiffs can give in evidence a lease afterwards made by himself, he can recover what sum he pleases ; for it

Ainslie *v.* The Mayor, &c. of New-York.

would not be difficult for him to find some irresponsible person to accept a lease reserving such rent as the lessor may choose to insert; and if the ferry company were in fact the tenants of the defendants, as to the pier, then the lease to them from James Ainslie and John Morrell is utterly void as to the defendants. (1 *R. S.* 744, § 3.) There was no judgment against the ferry company under which they could have been turned out of possession. And if that company were not, as to the pier, the tenants of the defendants, and the plaintiffs have been prior to and since the year 1827, the owners of the pier, then most clearly the company, and not the defendants, were responsible to the plaintiffs for the use and occupation of the pier. If, to entitle the defendants to a new trial, it were necessary to examine the ground upon which the circuit judge estimated the damages, it might be shown that he fell into several mistakes as to matters of fact.

The following extract, from the opinion of the circuit judge, shows how he arrived at the conclusion that the plaintiffs were entitled to recover $2040 damages. " It seems, that prior to the recovery in ejectment, the defendants received as rent of a part of these premises, $430 a year, and since the recovery $500 a year rent has been paid for the same part of the premises, and $200 a year for the residue thereof. How much was paid for this latter part prior to the recovery does not appear. It is perhaps fair to presume, situated as the premises are, and have been for several years, that all parts of them were in as much demand prior to the recovery as since.

"The demise is laid in the declaration at 1st December, 1836, and there being no plea of the statute of limitations, the damages are to be calculated from that time. Taking then the rent at $630 a year, for five years and five months, and allowing interest upon it from the end of each year, and the costs as taxed at $130, and allowing these plaintiffs one half of that sum, as their suit is only for a moiety, and they would be entitled to $2040,67, for which amount there must be judgment for the plaintiffs.

Ainslie v. The Mayor, &c. of New-York.

| | |
|---|---:|
| Rent from 1 Dec. 1836 to Dec. '37, . . . . | $630 |
| Int. to 1 May, '42, 4 y'rs 5 m's, . . . . | 194,77 |
| Rent from 1 Dec. '37 to Dec. 1, '38, . . . . | 630,00 |
| Int. as above 3 y'rs 5 m's, . . . . . . | 150,67 |
| Rent from 1 Dec. '38 to 1 Dec. '39, . . . . | 630,00 |
| Int. 2 y'rs 5 m's, . . . . . . . . . | 106,57 |
| Rent from 1 Dec. 39 to 1 Dec. '40, . . . . | 630,00 |
| Int. 1 y. 5 m's, . . . . . . . . . . | 62,47 |
| Rent from 1 Dec. '40 to 1 Dec. 41, . . . . . | 630,00 |
| Int. 5 m's, . . . . . . . . . . . | 18,37 |
| Rent from 1 Dec. '41 to 1 May, '42, . . . . | 262,50 |
| Costs of ejectment, . . . . . . . . . | 136,00 |
| | $4081,35 |
| | $2040,67" |

The annual rent of $430, which the defendants received from the ferry company, was received exclusively for the ferry. Not one cent of it was received for the *pier*, or for any other part of the premises mentioned in the plaintiffs' declaration. In relation to the land leased to Robert Seeley, and for which he was to pay an annual rent of $200, the circuit judge assumed that all that land was a part of the premises in question. Whereas only one fourth part of it was a part of the premises described in the plaintiffs' declaration. The land leased to Robert Seeley, extends from Grand-street, south one hundred feet. The premises described in the declaration extend from Grand-street, only *twenty-five feet*. It is evident, therefore, that the damages as settled by the circuit judge are, by reason of his mistake as to matters of fact, excessive. But independent of the damages, a new trial ought to be granted. The costs to abide the event.