# CHARLESTON

HUDSON *v.* IGUANO LAND & MINING CO.

Submitted June 12, 1912.   Decided December 3, 1912.

1.   JUDGMENT—*Merger and Bar—Causes Merged.*
    When the cause of action in a second suit is the same as that in a former one and the parties are identical, both are concluded by the judgment or decree in the former suit, not only as to what was actually decided therein, but likewise as to everything the plaintiff could have adduced in support of his claim and as to everything the defendant could have relied upon in defense. The cause of action is merged in the judgment or decree.   (p. 407).

2.   SAME—*Conclusiveness—Matters Concluded.*
    When the causes of action are different, the former decision

is conclusive only as to questions, rights and facts actually decided therein, and nothing more. (p. 408).

3. SAME—*Merger and Bar—Dismissal—Title to Real Property.*

Dismissal of a bill to remove cloud from title to real estate, for failure of the plaintiff to prove good title, does not preclude his defense of an action of trespass or bill for an accounting for timber and coal taken from the land, subsequently brought by the defendant in such former suit. (p. 409).

4. SAME.

In such case, the causes of action are different, and, as the former decision does not adjudicate title or possession in the defendant, but only lack of title in the plaintiff, it is not *res judicata* as to the matters involved in the subsequent suit. (p. 409).

5. INJUNCTION—*Subjects of Relief—Trespass.*

In the absence of disclosure of good title in the plaintiff, or an action at law to settle the title, brought or about to be brought, equity has no jurisdiction to enjoin a trespass to real estate. (p. 414).

6. EQUITY—*Jurisdiction—Remedy at Law.*

Except in cases of an equity of some sort, conferring jurisdiction, courts of equity will not determine questions of fact peculiar to the jurisdiction of the courts of law. (p. 414).

7. AMOUNT—*Jurisdiction—Accounting.*

Necessity of computation of the quantity and value of coal mined and timber cut from land by a trespasser confers no right to an accounting in equity. (p. 414).

Appeal from Circuit Court, Putnam County.

Bill in equity by Mary Patton Hudson against the Iguano Land & Mining Company. From a decree for plaintiff, defendants appeal. .

*Reversed.*

*Brown, Jackson & Knight* and *J. H. Nash,* for appellants.

*Enslow, Fitzpatrick, Alderson & Baker,* for appellee.

POFFENBARGER, JUDGE:

A former adjudication set up here brings into this record that of *Iguano Land & Mining Co.* v. *Jones et al.,* heretofore decided by this Court, and reported in 65 W. Va. 59. The opinion in the report of that decision recites at length and minutely all of its material facts and the proceedings therein. Reference

to it will, therefore, be sufficient for the purposes of this opinion, in so far as it deals with the force and effect of the former adjudication, and also in a large measure for inquiries, extending beyond it.

Mrs. Mary Patton Hudson, who was a party to that cause, having procured the rights of all persons associated with her in interest, after the decision thereof, dissolving the injunction and dismissing the bill of the Iguano Land & Mining Company, brought this suit for an accounting for timber cut from the land and coal mined therefrom by the Plymouth Coal & Mining Company, lessee of the Iguano Company, during the pendency of the former litigation, making the Iguano Company and the Plymouth Company parties defendant. Demurrers of both defendants were overruled and the cause went to a final hearing on answers, replications and proof, resulting in a decree declaring Mrs. Hudson to be the owner of that portion of the Lockhart 200 acre survey which lies within the boundaries of the 2500 acres claimed by the Iguano Company, and entitled to the rents, issues and profits thereof, enjoining the defendants from the further mining of coal therein, declaring her right to compensation for the coal already mined and timber cut therefrom, referring the cause to a commissioner to take, state and report an account, and consolidating with this cause the old suit of the *State of West Virginia* v. *R. A. Jones et al.,* in which Mrs. Hudson and her associates attempted to redeem the land from forfeiture, and in which such redemption was temporarily enjoined in the cause lately decided by this Court, as above stated.

In addition to the former adjudication, the plaintiff in this bill relies upon a claim of possession of the tract of 85.5 acres, part of the Lockhart 200 acre survey, lying within the 2500 acre claim of the Iguano Company, at the beginning of the former litigation, and prior to the commencement thereof, as a basis for two separate and distinct contentions, (1) adjudication in the former suit of possession on her part, and (2) forfeiture of the claim of the Iguano Company to title to the forfeited Lockhart survey by transfer under the constitution.

Her bill alleges her possession on or about the 23rd day of August, 1899, the date of the award of the injunction against

her, interruption thereof by the injunction and subsequent possession by the defendants, to her exclusion, under the protection of the injunction. The brief of counsel for Mrs. Hudson charges an admission in the bill of the former suit of her possession of the land at the date of the filing thereof. That bill says R. A. Jones, Mary Patton Hudson and Oliver A. Patton, at that time, were "unlawfully and vexatiously setting up and asserting title to the lands" and "proceeding to take possession thereof and cut timber and commit waste thereon" and "disturbing and disquieting the tenants" of the plaintiff upon said land "by notifying them of their claim of title and asserting title to said lands" and "offering to market said title" and "trying to find purchasers therefor." It charged "actual, exclusive and continuous possession of the said 2500 acre tract since the year 1860 by E. G. Tyler and those under whom the plaintiff claimed." It also recited the institution of an action of ejectment in 1887 by Robert Patton and others to test the validity of the Middleton patent under which the defendants to the bill claimed and a judgment therein for the defendants, and then said "since the trial of said ejectment suit nearly nineteen years ago, no effort was made until lately, as hereinafter stated, by any one to assert title under said 1137 acre patent to any part of your orator's said lands, during which long period, as well as prior thereto, it and its said grantors have continued in the quiet and undisturbed possession thereof." These allegations seem sufficient to negative any admission of possession on the part of the defendants and clearly assert possession on the part of the plaintiff in said bill.

The answer denied possession in the plaintiff of any kind at any time. Its averments as to possession on the part of the defendant are as follows: "Respondents allege that the said four tracts of land claimed and owned by them as aforesaid consists mainly of wild lands—virgin forests, which are not susceptible of being held in occupancy of any one or in 'actual, exclusive and continual possession of complainants, as they allege, but respondents allege that they have been in exclusive continuous possession of said tracts ever since the accruing of their title thereto, to which they have never known of any denial or contrary claim until the bringing of this suit. * * * Respond-

ents allege that while it is true that "no effort was made until recently' to assert title to the 1137 acres tract of land by suit, they have never deemed it necessary under the laws to do so, as they were unaware of any adversary claimants thereto, or that their title to the same was in any manner questioned or disputed." Appellants in this suit say these averments of possession assert only a claim of legal or constructive possession conferred by title, and not actual possession, and that there is no assertion of actual possession in the answer.

If the former adjudication against the Iguano Land & Mining Company is conclusive in Mrs. Hudson's favor, as matter of actual decision or estoppel, what right, title or possession any of the parties previously had is now immaterial. Hence disposition of the claims and contentions, based on that decision, is logically first in order, and decisive, if the theory of complainant's bill shall prove to be sound.

The former suit had a twofold object, (1) to have the Middleton patent declared invalid as against the title of the plaintiff and removed as a cloud thereon, and (2) to quiet the plaintiff in its possession by injunction against molestation thereof. All else was subsidiary. The injunction against redemption from forfeiture proceeded upon the invalidity of the Middleton patent and was an attempt to prevent the acquisition of further ground for the claim of title under it.

Regarding the former suit as analogous to our statutory action of ejectment and the decree of dismissal as the equivalent of a judgment for the defendant in such an action, agreeably to observations found in *Mills* v. *Oil Co.,* 57 W. Va. 255, and *Logan* v. *Ward,* 58 W. Va. 366, an inquiry as to the effect of such a judgment upon future litigation between the same parties arises. At common law, a judgment in ejectment was not conclusive, because the parties were fictitious and could be changed at the will of the real parties, resulting in successive actions. Moreover, it did not reach the question of title but was limited to the right of possession only. In all the states in which the character of the action has been changed by statute so as to permit the real parties in interest to become litigants, judgments in ejectment are conclusive under the principles of former adjudication, unless the statute, by allowing a new trial as a matter

of right, denies them the quality of conclusiveness. The rule on the subject in Missouri is peculiar. Under a statute of that state, making judgments in all cases conclusive, judgments in ejectment were held to be so. The repeal of that statute was accepted by the court as evincing intent to place such judgments on their common law footing. In Pennsylvania, the statute allows a second trial as a matter of right. In other states, in which the real parties in interest are permitted to litigate questions of title direct, the judgments are conclusive. *Miles* v. *Caldwell*, 2 Wall. 35; *Sturdy* v. *Jackaway*, 4 Wall. 174; *Byers* v. *Neal*, 43 Calif. 210; *Caperton* v. *Schmidt*, 26 Calif. 479; *Lamar* v. *Knott*, 74 Ga. 379; *Bazille* v. *Murray*, 40 Minn. 48; *Doyle* v. *Hallam*, 21 Minn. 515; *Oetgen* v. *Ross*, 54 Ill. 79; *Beebe* v. *Elliott*, 4 Barb. 457; *Ainslie* v. *Mayor*, 1 Barb. 168; *Cheger* v. *Lansing*, 64 N. Y. 417; *Bickett* v. *Nash*, 101 N. C. 579. For numerous additional cases see the note to *Caperton* v. *Schmidt*, 85 Am. Dec. 187, 208. Our statute, section 35 of chapter 90, makes the judgment conclusive as to the right of possession established in the action, except as otherwise provided. *Wilson* v. *Braden*, 48 W. Va. 196, 206.

The doctrine of estoppel by former adjudication has its limitations and certain rules and principles govern the application thereof. The same cause of action between the same parties can be the subject of only one adjudication. It becomes merged in the judgment and no longer has a separate existence. It is extinguished by the judgment and ceases to be. Herman on Est. & Res. Ad. pp. 560, 561. If the plaintiff recovers a judgment, his rights thereafter arise upon it, not the original cause of action. He has remedies for the enforcement of the judgment or decree, but no right to maintain a second suit for the same demand. If he fails and there is a judgment or decree for the defendant, he cannot put the latter to a subsequent trial for that cause of action. A judgment for the defendant operates as effectually by way of estoppel as one for the plaintiff, and decrees in courts of equity stand upon the same footing in this respect as judgments of courts of law. Herman on Est. etc., pp. 477, 478.

The principle may be invoked in either of two ways. If the judgment or decree is pleaded in bar of the second action and

the record on its face discloses the identity of the parties and cause of action, the issue is concluded by the record, a result to be declared as matter of law by the court. Instead of pleading it, the party entitled to the benefit thereof may rely upon it as evidence and the record then goes to the jury along with other evidence. In the former case, the record concludes the plaintiff without further evidence, but, in the latter, it merely goes to the jury as evidence and does not prevent the trial of the issue. *Navigation Co.* v. *Guillou,* 11 M. & W. 877; *Voight* v. *Winch,* 2 Barn. & Ald. 662; *Plummer* v. *Woodburne,* 4 B. & C. 625; *Newington* v. *Levy,* L. R. 6 C. P. 180.

When the cause of action in the second suit is the same as that in the first and the parties are identical, they are concluded, not only as to what was actually decided, but also as to all matters which the plaintiff could have adduced to sustain his claim and which the defendant could have pleaded or proven in defense of the action. In such cases, there is no inquiry as to what was actually decided, as contradistinguished from things which could have been decided or may have been.

But the principle applies in cases in which the parties to the second suit are the same as those of the first and the cause of action is not the same, so as to prevent a trial in the second suit of a question settled and determined in the first; but the rules in such cases are different. In them, it becomes necessary to ascertain whether the particular question sought to be raised in the second suit was actually decided and determined in the first. This necessitates resort to the particular issues made and findings thereon. *Russell* v. *Place,* 94 U. S. 606; *Cromwell* v. *County of Sac.,* 94 U. S. 351; *DeSollar* v. *Hanscome,* 158 U. S. 216; *Burn* v. *Ray,* 49 W. Va. 129.

The requisite of certainty in all estoppels necessitates this variation in the application of the principle. Estoppels must be certain to every intent. When the cause of action is the same, such a degree of certainty is shown by the record. It identifies the subject matter, the rights claimed and denied and the parties, placing beyond doubt or question what was claimed on the one side and resisted on the other. It is unnecessary to descend into the particulars of the respective claims and contentions or the minutiae of the proceedings. When the cause of

action is different and only the decision of a particular question between the parties is relied upon in the subsequent action, the identity of the parties and relation of the causes of action, fail to show with certainty that it was decided, and it becomes necessary to go into the record and ascertain whether it was or not.

From these conclusions, the inquiry as to whether the cause of action in the second suit is the same as that of the first is obviously important and productive of decisive results. More than one cause of action may grow out of the same contract. So, also, may more than one arise respecting the same piece of property. Hence the identity of the contract or the property is not conclusive. Take, for illustration, an executory contract for the sale of land. Circumstances entirely aside from the validity of the contract may constrain a court of equity to refuse specific performance of it, without declaring it invalid. Thereafter a court of law may entertain an action on it for damages. Here we have the same contract and the same parties, but the former suit would not conclude the latter. The causes of action are not the same. One is the assertion of a claim for damages for a breach of the contract, and the other a claim of right to specific performance. Money may be due on a contract in installments. An action for the first installment may be defeated by proof of payment or sets-off. A second action upon the same contract for another installment would be founded upon a new cause of action growing out of the same contract. The owner of real estate, being out of possession, may bring a possessory action at law to recover it, or, being in possession and having good title, he may sue for a trespass thereto, or to remove a cloud. In all these cases, the property and parties are the same, but the rights and wrongs giving rise to the action and constituting the cause of action in the several cases are different. To constitute a cause or right of action, two elements must concur,— a duty and a breach of it. There can be no actionable wrong unless there is a duty resting upon a person, and he breaks it. If there is no duty, though the act of the defendant may work harm or damage, there is no right of action. *Clark* v. *Railroad Co.*, 39 W. Va. 732. To constitute a cause of action there must be a right possessed by the plaintiff and an infringement of that right by the defendant. *Railroad Co.* v. *Rice*, 36 Kan.

593; *McCandless* v. *Acid Co.,* 115 Ga. 968; *Williamson* v. *Railway Co.,* 84 Ia. 583; *Hayes* v. *Clinkscales,* 9 Rich. (S. C.) 441; *Wisconsin* v. *Torinus,* 28 Minn. 175. The correctness of these definitions is attested by many decisions illustrating the application of the principle under consideration.

In *Cromwell* v. *County of Sac,* 94 U. S. 351, a judgment for the defendant in an action upon certain interest coupons, on failure of proof of payment of a valuable consideration therefor, was pleaded in bar of a subsequent action, on bonds of the same series and coupons attached thereto. Notwithstanding this close relationship of the subject matter of the two actions, the plaintiff in the second suit was not estopped to show that he had purchased the bonds there involved for value before maturity. The court distinctly held the cause of action in the second suit not to be the same as that of the first. The offered evidence introduced an additional element. It then became a question as to whether there had been a former decision against the payment of a valuable consideration for the bonds subsequently sued on. In *Rusell* v. *Place,* 94 U. S. 606, a former judgment in an action for infringement of a certain patent was held not to estop the defendant in a suit in equity by the same plaintiff from contesting the validity of the patent, it not appearing by the record of the action nor by extrinsic evidence, upon what claim the former recovery had been had. Here the same patent was involved and the same persons were parties, but one action was for the recovery of damages and the other for an injunction and an accounting for issues and profits. Hence the causes of action were different. In *De Sollar* v. *Hanscome,* 158 U. S. 216, a judgment for the defendant in an action at law was relied upon as an estoppel in a suit for specific performance on a contract of sale of land. In an action at law, damages had been sought for injuries to the market value of the land by the recordation of the alleged contract of sale. The court held that, as the causes of action were different, notwithstanding they had arisen out of the same transaction, the judgment would not estop the plaintiff in the second suit, unless it appeared there had been a decision against the validity of the contract, which was not in any way disclosed. It was not enough merely to show there had been a former adjudication between the parties,

relating to the same contract. In *Western &c. Co.* v. *Virginia Coal Co.,* 10 W. Va. 250, a former decision in *Western &c. Co.* v. *Peytona Coal Co.,* 8 W. Va. 406, was held to be decisive of the issues involved because they had been expressly and directly decided in the former suit. The purposes of the two suits were not the same. The former had for its object rescission ,of a contract of sale or compensation for excess of land over the quantity paid for. The purpose of the second suit was to enjoin a trespass to real estate, pending an action of ejectment. The same land was involved in both and the parties to the second had been parties to the first. There the court went into the record of the first case to ascertain what had been actually decided, the causes of action not having been identical. The principle is well illustrated in *Coville et al* v. *Gilman,* 13 W. Va. 314, in which a verdict and judgment in an action of *assumpsit* between two parties was held not to have adjudicated the non-existence of a partnership between them, a claim of which constituted the basis of a subsequent suit in equity, notwithstanding the defendant in the former action had relied in its evidence upon the partnership. The causes of action were different and the partnership had not been put in issue by any pleadings.

Tested by these principles the cause of action stated in the bill in this suit differs from that on which the former suit was based. This bill claims a right to an accounting for timber and coal taken from the land under a claim of title thereto. The former bill sought the removal of a cloud on the alleged title of the plaintiff therein to the same land, and an injunction against molestation of its tenants in possession thereof. Had the plaintiff in the former suit instituted a new one for the same purposes, it would have sufficed to have pleaded the decree of dissolution and dismissal. An inquiry as to what was actually decided beyond that would have been unnecessary. If, instead of filing another bill of the same kind, it had brought an action of ejectment, the decree of dissolution and dismissal might not have been sufficient, the second cause of action being different, and it may have been necessary, in order to defeat the action, to show an adjudication in the former decree against the claim of title. The cause of action set up in this bill is more clearly and

decidedly a different one. It asserts title in the plaintiff and a resultant right of accounting. That the alleged right and an invasion thereof relating to the same property did not make a cause of action the same as that of the former suit, is perfectly clear. Hence the decree in the former suit does not necessarily conclude the defendant, and it becomes necessary to go into the record of that former suit and ascertain what was actually decided. If there was an adjudication therein of title in the defendant, the plaintiff here, that finding estops the defendant here, the plaintiff in the former suit, and sustains the bill in this cause. But, if the inquiry discloses only an adjudication of no title in the plaintiff in the former suit, it does not follow as a legal or logical sequence that the defendant therein had title, and, if there was no adjudication of title in her, the decree neither estops it in her favor nor sustains her in this suit. To maintain its position in the former suit, it was incumbent upon the plaintiff to establish good title and possession. Failure to do either was sufficient to deny it relief in the circuit court and to call upon this Court for reversal of the decree in its favor. To obtain reversal and dismissal in the former suit, it was neither necessary for the defendants to prove title in themselves, nor for the court to decide that they had it. Hence it was neither necessarily in issue nor necessarily decided.

The final decree in the former suit was pronounced by this Court. Finding the court below had rendered an improper decree, it rendered such a decree as should have been originally pronounced. It took up the record and made its own findings of fact from the pleadings and evidence and applied the law. Hence, to ascertain what was actually decided, resort must be had to the record of that case and the opinion of this Court, as in other instances in which its decisions are relied upon as matter of adjudication. *Western &c. Co.* v. *Virginia Coal Co.,* 10 W. Va. 250; *Dent* v. *Pickens,* 59 W. Va. 274. The title papers of both parties are fully and accurately described in the opinion in the former decision, and the allegations of the bill and averments of the answer as to possession are set forth in this opinion. The opinion in the former case finds and declares a forfeiture of the Middleton title and the answer of the parties claiming under it admits it. There was a redemption from

forfeiture for the non-payment of taxes in 1881, but a subsequent forfeiture resulted from failure to have the land entered upon the land books. As to the title claimed by the plaintiff in that suit, the Hollingsworth grant, the court found it had not been forfeited, that it covered the 200 acre Lockhart survey, a portion of which is the land in controversy here. It was further found and decided, however, that the plaintiff had failed to connect itself with the Hollingsworth title. In other words, there was a break in its chain of title. But for that, there would have been an adjudication of good title in the plaintiff, and an utter lack of title in the defendant who claimed then as she does now, so far as title is concerned, only the right to redeem her forfeited title. Certain deeds covering the land in controversy were put in evidence by the plaintiff, which the court said constituted color of title. And, under these, possession had been held and taxes paid for a period of time sufficient to transfer to the occupants thereunder the forfeited Middleton title. In this connection, the opinion says: "Such conditions would invest it with as good and as indefeasible a title as if its chain had been properly connected up with the grant to Hollingsworth." But there was also failure on the part of the plaintiff to connect with those deeds. Thus, while there was a finding against the title in the plaintiff, there was also a failure to find any title in the defendant. On the contrary, the opinion distinctly finds and asserts that she had no title, and also that she neither claimed nor had any possession of the land in controversy. On the latter point, the opinion says: "It is not shown that the defendants, or those under whom they claim, are, or ever have been, in possession of any part of the 1137 acres involved in this suit." And again, that "the defendants do not claim ever to have been in possession of any part of the land which they seek to redeem; but, on the other hand, plaintiff proves possession, by itself and those under whom it claims, continuously since 1865, and also that it had paid all taxes on the 2500 acres since that year." We do not say this is matter of adjudication, however, for the possession of the plaintiff may have been wholly outside of the Lockhart survey, and on land not claimed by Mrs. Hudson.

What is said in this opinion and in the former one suffices to

show that, aside from the adjudication relied upon, such title as the plaintiff has was forfeited to the state years ago. The procurement of the Middleton patent was an effort on the part of the patentee to secure the four Lockhart surveys, granted to Banks and forfeited in his name. One of these tracts, embracing the land in controversy, was not excepted from the Hollingsworth grant. As to it, the Banks grant was senior and the Hollingsworth grant junior. Under the forfeiture laws of Virginia, the senior grant had likely inured to the benefit of the holders of the junior one. However that may be, the Middleton title was forfeited for non-entry upon the land books for the purposes of taxation after the year 1881. From that time it was not taxed nor was there any injunction against taxation or redemption thereof until 1899, a period of 17 years. Whether that forfeited title, such as it may be, remains in the state, we are not called upon to say.

Jurisdiction in equity for the purposes of this bill, injunction against a trespass and an accounting for coal and timber, must rest upon good title in the plaintiff, and it was filed upon the assumption of such title, conclusively shown by the record of the former adjudication. Principles declared in *Freer* v. *Davis,* 52 W. Va. 1, deny jurisdiction in equity to prevent trespass by injunction, in the absence of disclosure of good title in the plaintiff, unless it is a necessary auxiliary to a pending action at law, or one about to be instituted, to settle the title. This bill discloses neither of the essential elements of jurisdiction. Read with the record exhibited therewith and as a part thereof, it shows no adjudication of either title or possession in the plaintiff, and there is no allegation of the pendency of an action at law nor of intent to institute such an action. All this arose on the demurrers to the bill, which should have been sustained.

This ground of jurisdiction having failed, nothing remains except a simple charge of trespass and a demand for an accounting in equity for the damages. The right to such an accounting can neither precede nor assume the establishment of the trespass itself. It is a sequence, dependent upon the existence of the trespass, and an issue of that kind belongs exclusively to courts of law in the absence of an independent equity such as

only an equitable title rendering the legal remedies inapplicable, inadequate and inappropriate.

The alleged right of redemption from the forfeiture to the state is not such a title. It is no title at all. The forfeiture is complete and total, extinguishing equitable as well as legal title. The privilege of redemption, accorded by the statute, is a mere matter of grace on the part of the state, vesting no interest in the land until effected in the manner prescribed by law. *State v. King,* 64 W. Va. 575, 596; *McClure v. Maitland,* 24 W. Va. 561; *Coal Co. v. Howell,* 36 W. Va. 489; *Wiant v. Hayes,* 38 W. Va. 681; *Curran v. Owens,* 15 W. Va. 208.

These conclusions render it wholly unnecessary to consider any of the evidence bearing on the question of possession. That alone would not sustain an injunction, nor afford ground for an accounting. No complication of accounts is shown, and whether it would afford ground of equity jurisdiction, under such circumstances, if it were, we need not inquire. If there is a right of recovery, the ascertainment of the damages involves no more than the computation of the value of the tonnage of coal mined from a certain number of acres of land and timber cut therefrom.

For the reasons stated, so much of the decree complained of as relates to this cause will be reversed, the injunction dissolved and the bill dismissed, without prejudice, however, to any right the plaintiff may have to prosecute any other suit or proceeding in equity or at law for the vindication of any right she may have.

*Reversed.*

Brannon, President, (*dissenting*):

I am unable to see why the former decree is not *res judicata* to prove the superiority of the Hudson title over that of the Iguano Company. The company presented its title as paramount over that of Mrs. Hudson. Mrs. Hudson pleaded her title as defense. The suit was a comparison of titles. The Iguano Company failed because it did not show title. As between these two parties the decree held the company title bad as compared with that of Mrs. Hudson. The company sought to remove the cloud of the Hudson title and failed. It was an ejectment in equity, a test of two adversary titles. Like ejectment the plain-

tiff must show good title. *Logan* v. *Ward*, 58 W. Va. 366. Once the action of ejectment concluded nothing as to title; but since we have made it a real action in place of the writ of right, it is different. The Code says that judgment in it "shall be conclusive as to the right of possession established in such action upon the party against whom it is rendered." Is not the following text in Herman on Estop., sec. 204, sound law? "When a plaintiff avers title and right of possession in himself, and the defendant denies these allegations, and on the other hand avers title and right of possession in himself, the title is *prima facie* in controversy; and in such a case the judgment operates as an estoppel in any future litigation between the same parties." 85 Am. Dec. 209, says: "The effect of the statutory provisions of the different states upon the action of ejectment renders that action one which affects the title of the property in controversy in it. It binds that title, not only as to the parties to the action, but also as to all who derived title under them from the time of the commencement of the action. To that extent, the judgment, while it remains in force, conclusively settles the rights of the parties, and those claiming under them, or either of them, to the property in controversy. Where issue is made by the parties in their real names, and the land is accurately described, a verdict and judgment in such action, where the title to the fee is in question, is a bar to a second trial for the same cause of action between the same parties, and those in privity with them, unless the statute provides to the contrary." Citing many cases. A suit was brought in Ohio, under a statute, allowing suit by any person in possession of land against any person claiming an estate or adverse interest therein. Afterwards was an ejectment. The court held that "The judgment of a court in proceedings under this statute determines the merit of the plaintiff's title as well as that of the defendant; and is conclusive whether adverse to one or the other." It was a suit to quiet title by removal of an adverse claim, like this one. The Supreme Court of the United States in *Lessee of Parrish* v. *Ferris*, 2 Black 606, said: "It is quite apparent that the title of the defendant to the lands in question is involved under this act, and that the determination of the Court must be conclusive against him and all claiming under him as between the parties.

If not, the act is of no effect. And it is difficult to see how this determination can take place without at the same time necessarily involving the determination of the plaintiff's title. The estate to be determined by the very terms of the act is an estate adverse to the plaintiff, thus raising an issue between the estates or titles of the respective parties to the lands in controversy. Again, suppose the determination be, as it was in this case, in favor of the adverse estate, is the adjudication of no effect? Is it binding only when against this estate? We suppose not." The effect is mutual. Hermon, sec. 135; *Stockton* v. *Copeland,* 30 W. Va., p. 681.

There was a chancery suit brought to annul the Hudson title, and decree of failure on merits. Does not this fix that the company had no title against the Hudson title? The titles were both in the record, and necessarily decided upon. *Beckwith* v. *Thompson,* 18 W. Va. 103. The decree is conclusive upon all issues. *Watson* v. *Watson,* 45 W. Va. 290. See 99 Am. St. R., 233, *Hersbach* v. *Cohen.*