BEEBE *vs.* ELLIOTT.

A judgment in ejectment has the same force and efficacy as any other judgment. Hence a former recovery in an action of ejectment, in which action the question in controversy was the location of the boundary line between the parties, is conclusive in a subsequent action of trespass *quare clausum fregit* between the grantee of the plaintiff in the ejectment suit, and the defendant in that suit, and a person claiming title through him as a privy.

A former recovery, in which the same matter was tried upon the merits, may be given in evidence without being specially pleaded, wherever the party, plaintiff or defendant, had no opportunity to plead the recovery specially. And such recovery, though received in evidence under general pleadings, is as conclusive as in cases where the matter is specially pleaded.

THIS was an action of trespass for breaking a close claimed to be parcel of great lot R. H. 1. in Harper's patent.   The defence interposed was, that the premises in question were included within the true boundaries of a tract of two thousand acres of the same patent, known upon the maps as R. Watts' lot. In 1839, Geo. Balis was in possession, as tenant in fee, of 145 acres of R. H. 1, and David Goodnough of an adjoining parcel in Watts' tract.   An ejectment was brought, and tried in that year, by the former against the latter, and the question in controversy was the location of the line between the parties.   The effect of the recovery by the plaintiff in that suit presents the only question material to be considered here.   This cause was referred to Messrs. Henry Van Derlyn, Robert Monell and James W. Nye, whose opinion was annexed to the case.   The cause came before the court upon a motion for a new hearing.

*R. Balcom,* for the plaintiffs.

*H. R. Mygatt,* for the defendants.

*By the Court,* MOREHOUSE, J.   A judgment in ejectment has the same force and efficacy as any other judgment.   It was al-

Bebee *v.* Elliott.

ways conclusive as to the right of possession and the title to mesne profits, but it was not a bar in a second action of ejectment, before the statute. Its ancient form was not devised for, nor did it claim to question, the mere right of property; and the title might be tried as often as the failing party chose. (23 *Wend.* 482. 3 *Hill,* 399, 417.) By the statute "every judgment in the action of ejectment, rendered upon a verdict, shall be conclusive as to the title established in such action, upon the party against whom the same is rendered, and against all persons claiming from, through, or under such party by title accruing after the commencement of such action." (2 *R. S.* 309, § 36.) The subsequent section provides for two new trials, the one as matter of right, and the other in the discretion of the court, in furtherance of justice. The statute applies to the party or parties to the record, and privies. The record is consequently the test as to the person against whom the verdict is rendered. The maps of the patent and the conveyances of the Watts lot, and the lots known or designated as E. L. 2, and R. H. 1, concur in calling for a straight line from the southwest corner of E. L. 2, to the south-east corner of R. H. 1. The former, as a place of beginning, was fully established by the witnesses, and known as the Mandeville corner. The course and distance from that point is south 87 degrees, east 320 chains. For half that distance, and to what is called "*the celebrated beech tree,*" there is a well marked line and evidence of its continued location to its eastern termination, without material deviation from a right line, abundantly sufficient to justify the finding of the referees, that it was thus originally located. If there never had been any actual ground location, the evidence would have satisfactorily established that what was called the eastern corner was the true terminus of the line in question, and the south-east corner of R. H. 1. The question litigated on the trial in the ejectment was the location of the south line of R. H. 1. upon Watts' tract. The jury found it to be a straight line from the "celebrated beech tree" deflecting southerly to Easton's corner. Judgment was perfected and possession given to the plaintiff, of the premises claimed north

Bebee *v.* Elliott.

of that line. In this judgment, Goodnough acquiesced, until by the terms of the statute the verdict and judgment matured into matter of estoppel as against him, the party to the record, and against all persons claiming under him by title accruing after the commencement of that suit, in July, 1839. It appeared that David Goodnough had been in possession from the death of his father during the war with Great Britain ending in 1815, hitherto claiming title and with the assent of the co-heirs. The defendant Elliott was his son-in-law, living in a house on the premises, and worked the place some of the time. Whatever right he had was as a privy to Goodnough. He set up no claim under any other. The referees, upon the question of estoppel, examined the record, without the accompanying parol proof to show the grounds upon which the parties proceeded, and the real issue passed upon by the jury. Under the issue joined in the ejectment suit, it is obvious that the most legitimate evidence to have been given was, that which related to the boundary between the parties, and that its location was necessarily in question and passed upon by the jury. ( *Wood* v. *Jackson,* 8 *Wend.* 9.) I concur entirely in the learned opinion of the referees upon the other questions of law in the case. And as a question of fact, if it was an open one, they were warranted in finding that there was an actual location, on the land, of a line from the Mandeville corner without deflection to an eastern terminus about twenty rods north of the Easton corner. A former recovery in which the same matter was tried upon the merits, may be given in evidence without being specially pleaded, wherever the party, plaintiff or defendant, had no opportunity to plead the recovery specially. That is this case. It was an action of trespass. The original recovery was denied, and no other plea was interposed as a defence. The notice that the *locus in quo* was the freehold of Goodnough afforded no opportunity for the plaintiff to reply the former trial and judgment. The record must show that the same matter might have come in question, viz. the boundary line between R. H. 1. and Watts' tract. That the record does show; and the fact that it did come in question was

shown, as it might be, by proof *aliunde*. That recovery, though received in evidence under general pleadings, is as conclusive upon the court, the referees, and parties, as in cases where the matter is specially pleaded. ( *Young* v. *Rummell,* 2 *Hill,* 478. *Miller* v. *Maurice,* 6 *Id.* 114. *Cowen & Hill's Notes to Phil. Ev.* 804 *to* 810, 971.)

I think the referees erred in not giving effect to the recovery in the ejectment suit as a bar to Goodnough's claim to lands south of the line established as his southern boundary by the verdict in that suit, and that their report must therefore be set aside.

Report of referees set aside.

---

Erie General Term, November, 1848. *Hoyt, Mullett, and Marvin,* Justices.