\*FREDERICA BAKER, RESPONDENT, v. GEORGE JOHNS AND CHARLES NETZ, APPELLANTS.

*Lease of lands in the Indian reservation — validity of — who entitled to renewals of — regularity of the proceedings at meetings of the councilors of the Seneca nation — when they cannot be questioned.*

On May 26, 1871, George Jemison, a Seneca Indian, residing on the Allegany Indian reservation, leased to the plaintiff certain premises therein for the term of twelve years. On June 16, 1874, the same Jemison leased to the

---

\*Decided March Term, 1885.

defendant Johns a portion of the said premises so leased to the plaintiff. December, 25, 1879, the council of the Seneca nation granted an application, made by the defendant Johns, for a renewal of his lease, and on January 20, 1880, the council granted an application made by the plaintiff for a renewal of her lease. The plaintiff had made and owned improvements upon a portion of the premises leased to her Upon that portion of the premises leased to the defendant Johns a house had been built in 1873, by a brother of the plaintiff, which was bought by the defendant, in 1874, from one Nelson, who had purchased it at a sale under a mechanic's lien. In April, 1879, improvements were also made by the defendant Johns upon the land leased to him. In 1876 and 1879 the plaintiff commenced actions against the defendant Johns for trespassing on the said lands and to recover the possession thereof, in which she recovered damages. Subsequently, this action was brought to recover the possession of that portion of the premises leased to the plaintiff which the defendant Johns claimed under his lease.

*Held*, that prior to the passage by congress, in 1875, of the act to authorize the Seneca nation to lease certain of their lands, leases given by Indians to white persons were, in a strict legal sense, invalid.

That the said act of congress confirmed the leases then outstanding and made them valid, and established in the lessees, who had made improvements, a right of renewal for a period not exceeding twelve years, on such conditions as might be agreed on by them and the councilors of the nation, or in case of their disagreement, by referees.

That the plaintiff's lease being prior in point of time to that given to the defendant was entitled to priority over it.

That as the plaintiff was under the said act entitled to a renewal as a matter of right, the conditions only being subject to the action of the councilors of the nation, the defendant could not object to the conditions imposed or as to the mode of their proof, so long as no objections thereto were made by either the plaintiff or the nation.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Cattaraugus Circuit, and from an order denying a motion for new trial.

*Ansley & Davie*, for the appellants.

*Henderson & Wentworth*, for the respondent.

BRADLEY, J.:

The action is ejectment to recover the possession of land which is part of the Allegany Indian reservation, and situated in the village of Salamanca, county of Cattaraugus.

On the 26th day of May, 1871, George Jemison, a Seneca Indian, residing on the reservation, made to the plaintiff a lease of certain

premises (of which those in question are a part) for the term of twelve years. And on the 16th day of June, 1874, the same Jemison executed and delivered to the defendant a lease of the land in question to the defendant Johns, and the defendant Netz is his tenant and in possession of it. The plaintiff had a verdict and judgment from which, and from order denying a new trial, this appeal is taken.

By act of congress of February 19, 1875, entitled "An act to authorize the Seneca nation of New York Indians to lease lands within the Cattaraugus and Allegany reservations, and to confirm existing leases," it was provided that the president of the United States apppoint three commissioners to survey, locate and establish proper boundaries of the villages of Vandalia, Carrollton, Great Valley, Salamanca, West Salamanca and Red House, on the Allegany reservation, make maps thereof, and designate on the maps defined, as near as may be, the lands therein then leased, and to deposit the surveys and maps in the clerk's office of that county for record and preservation; that the then existing leases within those boundaries should be valid and binding for the term of five years thereafter, unless by the terms thereof they expired before that time, and at the end of that time, and on the expiration of term of leases before then, the Seneca nation should be entitled to the possession of the lands so leased. But it was further provided that the leases should, at expiration of the term, or of that time, be renewable for a period not exceeding twelve years, and that the persons who may be, at such time, the owner or owners of improvements erected on such lands shall be entitled to such renewed leases, and continue in possession on such conditions as may be agreed upon by them and the councilors of the nation, and if they cannot agree, the terms to be fixed by referees selected in a manner prescribed by the act. (18 U. S. Stat. at Large, 330.)

The surveys and maps were made, filed and recorded pursuant to that act of Congress. The defendant made application to the counsel of the Seneca nation on the 25th day of December, 1879, for renewal of the lease before mentioned to him, which was granted and lease made of that date. And on the 20th day of January, 1880, the plaintiff made a like application for renewal of her lease which was granted by the councilors at a meeting on the 8th day of May, 1880,

and lease of that date made to her, which included the land in the lease, to the defendant.

The plaintiff had made improvements on the land covered by her lease and within the meaning of the act of congress was the owner of them, and therefore entitled to a renewal of her lease. The only question is whether she had the right to include within her renewed lease that portion of the land in question.

The defendant Johns claims that he had made and owned improvements on it, and that he was within the act entitling him to renewal of his lease. There is evidence tending to prove that he made improvements on this land in April, 1879, that there was a house on it built there in 1873, which he bought of one Nelson, in 1874, who had purchased it on a mechanic's lien sale shortly before, that the plaintiff was advised of the purchase by Nelson and of his purpose to sell it to defendant Johns, and made no objection but said that it belonged to her brother and she had no claim on it. And it appears that her brother, with her permission, built the house and lived in it for a short time and left it. And that the plaintiff improved and cultivated the land in question until the defendant Johns took possession without her consent in 1879.

As between persons competent to contract, the one prior in time of two stipulations to the same effect would give the superior right And such rule should be applied here unless the anomalous situation before the act of congress, and the effect of its provisions since, do not permit the application of such rule. For many years prior to that act the Seneca nation had a system of allotment of lands to respective Indians, for occupation, cultivation and improvement, and in aid of such purpose there was some legislation of the State. (Laws of 1845, chap. 150, § 6; Laws of 1849, chap. 378), pursuant to which individual occupancy was observed. And it was also common for those occupants, or those so entitled to occupy, to make leases. But our attention is not called to any law which gave legality to any leases to white persons prior to the act of congress before referred to. Except so far as relates to police regulations, and to preserve the peace, and to prevent intrusion upon the reservation, the legislative power in respect to the tribe, and the lands occupied by them, is exclusively in congress. And the relation of the Indians is that in the nature of ward of the general govern-

ment. It, therefore, may be assumed that the leases to the plaintiff and defendant Johns were, in the strict legal sense, invalid prior to the act of congress of 1875, and that they had no legal right in respect to the leased premises except that afforded by possession; but that act confirmed, made leases then outstanding valid, and established rights under them as effectually as of the time of their execution as if they had been made by persons competent to vest the rights they purported to give. In that view the plaintiff became lessee of the entire premises covered by her lease, by the force of the act from the time it was made, and that to the defendant Johns was ineffectual to vest in him any right to the land embraced in it.

Then comes the effect of the act in respect to the right to have renewal. That necessarily related to an existing lease and one under which rights were vested by virtue of it, in view of the confirming act, and limited such right to those lessees who were the owners of improvements erected on the lands covered by their leases respectively. And except so far as the lessee had relinquished to another, the right to renewal of the lease is not qualified so as to permit the reduction or severance of the premises covered by it. While the act in terms does not distinguish between conflicting lessees nor declare a preference of those of the earlier dates in such case, it must be assumed that the purpose of the statute was that the rights of the lessees and their assigns, such as the law would recognize in respect to priority should be observed, and such is the fair and proper construction and effect of the act and the equitable rule to be applied. (*Ryan* v. *Knorr*, 19 Hun, 540.)

If this proposition is correct it follows that the plaintiff was entitled to renewal of her lease entire, and the continued possession of the premises covered by it, and the defendant, Johns, had in fact no existing lease and no right to any renewal in respect to the premises in question, unless the plaintiff had relinquished them to him in such sense that he might be treated as in possession as her lessee or assignee. The evidence does not permit the conclusion of any such relation between them. There is nothing appearing in connection with the circumstances of his purchase of the house on her part, which can be construed as the surrender of the possession

of the premises in question to him. And as between those parties the defendant had no right to the possession.

The provision in the act of congress for renewal of leases to persons who own improvements has reference to those only who, at the time the application is made, lawfully claim under a lease or under some one who has taken a lease which is then valid, and does not include one who has unlawfully, as against such lease-holder (entitled to renewal), entered and made improvements upon some portion of the premises. It appears that the plaintiff resisted the interference by the defendant Johns with her possession and enjoyment of the premises which he claims. That in June, 1876, she prosecuted him by action for trespass committed on them in the years 1872, 1873 and 1874 in the County Court, and a trial was had and she recovered. And that about the 1st of May, 1879, she commenced an action in this court against him to recover the possession of the same premises which he defended. And at the trial (May 24, 1880), it appearing that the plaintiff's title, on which the action was based at the time of its commencement had expired on 19th February, 1880, a verdict was rendered for the plaintiff for damages for the wrongful detention from her of the premises by the defendant, upon which judgment was entered against the defendant, with costs, pursuant to the statute in such case. (2 R. S., 308, § 31; *Lang* v. *Wilbraham*, 2 Duer, 171; *Van Rensselaer* v. *Owen*, 48 Barb., 61.)

This recovery is conclusive evidence as to the title of the plaintiff as against the defendant Johns up to the 19th day of February, 1880, and has no greater or other force or effect beyond that action between them as an adjudication. (2 R. S., 309, § 36; *Beebe* v. *Elliott*, 4 Barb., 457; *Briggs* v. *Wells*, 12 id., 567; *Cagger* v. *Lansing*, 64 N. Y., 417; *Dawley* v. *Brown*, 79 id., 390.) And this conclusive effect is wholly given by the statute. (*Bates* v. *Stearns*, 23 Wend., 482.) Thus it is conclusively established, by adjudication, that the defendant Johns derived no right to the possession of the premises from the plaintiff. And if we are right in the views above given, he had no position which enabled or permitted him, as against the plaintiff, to apply for or take the renewal lease under which he claims, but the right was exclusively in the plaintiff to have a renewal lease covering the entire premises embraced within that first taken by her.

The contention of the defendant's counsel that the evidence presented a question of fact in respect to the action of the council on the plaintiff's application for the renewal of her lease, and, therefore, the direction of the verdict was error, is not, we think, supported. It was, and had been, for many years, the custom of the council of the Seneca nation to assemble for the transaction of its business. The action of the councilors, when so assembled, was governed by rules and by-laws, a formal record of the proceedings was kept in a book by the clerk, and a copy of them certified by him are competent evidence. (Laws of 1847, chap. 365, § 7.) It is not necessary to hold that the original record or a copy certified by the clerk is conclusive evidence that they were correctly entered in the book. They would not be such in a direct proceeding within a proper time to attack, directly, action based upon them. But in a collateral action or proceeding to which the nation is not a party and which involves inquiry into the validity of the execution of a contract made pursuant to the record of the proceedings as entered, to which the nation is a party, and executed by the council by its president according to its established rules and custom, it is very questionable whether their proceedings as they appear on the record and the execution of such contract, in fact so made, can be attacked in that manner. But here the plaintiff was entitled to the renewal which she received. The only question open to the council of the Seneca nation was that of terms. The nation do not complain of them, and the defendant cannot, and the terms are in all respects those appearing on the record of the proceedings of the council.

If the propositions we have adopted as applicable to the case are correct, it follows that no error was committed by the trial court, and that the judgment and order should be affirmed.

HAIGHT, J., concurred; BARKER J., not sitting.

Judgment and order affirmed.