# CHARLESTON

## WHITEHOUSE v. JONES.

Submitted September 13, 1906.   Decided November 27, 1906.

1.   QUIETING TITLE—*Jurisdiction—Remedy by Ejectment.*
     One in actual possession of land under superior title may go into a court of equity to remove the cloud over his title arising from a claim under color of title thereto by another under an inferior adverse title.   That he might sue in ejectment does not deny him jurisdiction in equity.   (p. 684.)

2.   SAME.
     When in a contest in ejectment between two adversary titles to land judgment has been rendered in favor of one of them, and the claimant of the adversary title still claims notwithstanding the judgment against him, and disquiets the actual possession of the

successful owner, the latter may go into a court of equity to have injunction and relief, proper in the case, to quiet and give peace to his title and possession. (p. 688.)

3. SAME—*Relief Given - Injunction.*

Equity having jurisdiction to remove cloud over title to land and quiet title may, as incident to relief, enjoin the cutting of timber by the claimant under the bad title. (p. 690.)

4. APPEAL—*Objections Not Raised Below.*

An exception to the taking of a deposition made while it is in progress, though noted in the deposition, must be brought to the notice of the court before hearing on the merits begins below by motion to suppress, else it will not be regarded in an appellate court. (p. 693.)

5. CANCELLATION OF INSTRUMENTS—*Void Instruments.*

Equity has jurisdiction to cancel an instrument of title to land at the suit of one in possession under good title, though such instrument be void on its face. (p. 685.)

McWHORTER, JUDGE (Absent.)

Appeal from Circuit Court, Putnam County.

Bill by W. F. Whitehouse and others against R. A. Jones and others. Decree for plaintiffs, and defendant Mary Patton Hudson appeals.

*Affirmed.*

SIMMS & ENSLOW, for appellant.

BROWN, JACKSON & KNIGHT and J. H. NASH, for appellees.

BRANNON, JUDGE:

A grant from the State of Virginia, 3rd March, 1796, to Samuel Hollingsworth for 100,000 acres of land in Kanawha county. Title under this grant came to Mathias Bruen, and at his death it was partitioned among his devisees, the partition deeds dating May 16, 1850, under the decree. One of the lots in this partition was of 2,500 acres, in Putnam county, which came to the ownership of the plaintiffs in this suit, the Whitehouses. The Hollingsworth grant excludes three prior grants of tracts of 300, 400 and 500 acres, and in the assignment of said 2,500 acre tract in said partition deed such parts of said 300 and 500 acre prior grants as lie within the bounds of the 2,500 acre tract, as also 50 acres surveyed for Michael Shiverdecker, were excluded. No forfeiture for taxes of the 2,500 acre tract or the 100,000 acre

tract, of which it is a part, arises. There were four Lockhart surveys antedating the Hollingsworth grant, the three mentioned above, and one of 200 acres; but the 200 acre one is not excluded by said grant or said assignment of the 2,500 acre tract. It lies nearly all in the 2,500 acre tract. The said four prior Lockhart grants became forfeited to Virginia for taxes, and Henry O. Middleton obtained a grant from the State of West Virginia, 23d February, 1865, for a tract of 1,137 acres in Putnam county intending likely to rest his title on the forfeiture of the Lockhart title. This Middleton grant takes in part of the Lockhart tracts of 200, 300 and 500 acres, but none of the 400 acres, and takes in a large part of the 2,500 acre tract claimed by the plaintiffs. Benjamin P. Byram purchased of Middleton a half interest in the 1,137 acres, but Robert Patton became purchaser of the Byram half by executory contract. Benjamin P. Jones is a grandchild and David Jones a son of Benjamin Byram. Martha Ann is the wife of David Jones. They are devisees under Byram's will. The legal title to the Byram share is in his said heirs or Middleton. Middleton's administrator c. t. a. conveyed to Robert Patton the Middleton half, Patton thus becoming owner of it all, and it passed from him by conveyance to Nancy Patton, and from her to her two children, Mary Patton Hudson and Oliver Patton. This Middleton tract was sold in 1877 for delinquency for taxes, but in 1882 was redeemed from this sale in a proceeding by the commissioner of school land for its sale by the payment of taxes to the year 1881 inclusive. This land was left off the tax books for more than five years after the year 1881, and thus was forfeited to the state, and R. A. Jones and Mary P. Hudson asked the commissioner of school lands of Putnam county to institute a suit to sell the land (788 acres of the Middleton still claimed by them) in order that they might redeem, and the commissioner did institute suit, and Jones, Hudson and Patton filed an answer admitting the forfeiture and asking to be allowed to redeem; and an order was made allowing them to pay taxes for five years, and directing the land to be put on the land book on payment of the money for redemption, though no amount was fixed. The money was not paid in redemption before this suit was brought. This proceeding was begun and concluded on the same day, without notice to

any one or reference to a commissioner as required by the Code in such a proceeding.

In 1877 Robert Patton, J. W. Heavner, as administrator with the will annexed of Henry O. Middleton, and Benjamin P. Jones, David Jones and Martha Ann Jones, the last three as devisees under the will of Benjamin P. Byram, brought an action of ejectment in the circuit court of Putnam county against Russell Landers, George R. Crago, James Marten, William Carter, Albert Dean and George Landers to recover the tract of 1,137 acres. An order shows that in the action, W. F. Whitehouse, H. B. Whitehouse (since dead), F. M. Whitehouse, F. C. Whitehouse, E. N. Whitehouse and Louisa Whitehouse, recited as landlords of Carter and Crago, defendants in the ejectment, were made defendants in said action along with their lessees, and pleaded not guilty. They are owners of the 2,500 acres under said partition. On the trial verdict and judgment were rendered for the defendants.

When Jones, Hudson and Patton procured the order of redemption above mentioned the owners of said 2,500 acre tract, W. F. Whitehouse, F. M. Whitehouse, E. N. Whitehouse and Louisa Sheldon *nee* Louisa Whitehouse, claiming said 2,500 acres, brought this suit in equity in the circuit court of Putnam county against R. A. Jones, Mary P. Hudson, Oliver A. Patton and others, alleging the superiority of their title over that of the defendants, stating that the plaintiffs had been in possession and paid taxes since 1865, and that the defendants were not in possession; and stating that the defendants by said redemption proceeding, by offering the contested land for sale and lease, by disturbing the plaintiff's tenants on the land by notifying them that they owned and claimed the land, and by entering upon the land and cutting timber needed for the development of coal from the land, were casting cloud and doubt over the title, and praying that the grant to Middleton of said 1,137 acres be held invalid as against the title of the plaintiffs and be removed as cloud over the same, and that the defendants be enjoined from asserting title to the plaintiff's land under said Middleton title, and that an injunction be awarded restraining the defendants from taking possession of the land and cutting timber upon it, and from in any way interfering with the quiet and exclusive possession of the land by the

plaintiffs, and from taking any steps to redeem the land under the decree above mentioned allowing such redemption. The defendants demurred to the bill, but the court overruled it. They filed an answer. The decree perpetually enjoined the defendants from taking possession or cutting timber on the land, or in any manner interfering with the quiet and exclusive possession of the plaintiffs, and from taking further steps by payment of money or otherwise to redeem the lands under the order giving leave to redeem, and from entering the land on the land books, and holding the Middleton grant for the 1,137 acres invalid and of no force as against the title of the plaintiffs to the land in controversy. Mary Patton Hudson appealed.

Equity Jurisdiction. This is the first question. An argument against it is, that the plaintiffs should have gone into the proceeding brought by the State to sell the Middleton land as forfeited, and set up their claim, and resisted redemption, instead of bringing an independent suit. But that was begun and ended by final decree of redemption in one day. R. A. Jones, Mary P. Jones and Oliver Patton, claimants of the Middleton land, filed a petition with the commissioner of school lands admitting forfeiture, and asking him to bring suit to sell the land in order that they might redeem, and he filed a petition, they answered, and a decree allowing redemption upon payment of only five years' taxes, when much more was due, was made. The proceeding was so irregular and informal as hardly to be called a suit. No process, no parties, no adequate description of the land or title, no reference to a commissioner, no order of publication to afford interested persons any notice of the proceeding, and the whole done and closed, from beginning to end, in one day. It was so contrary to the requirements touching such a proceeding in chapter 105, Code 1899, as to be considered a void proceeding. The bill in the present case brands it as a fraud upon the court and as designed to get a secret and fraudulent redemption, and the facts seem to warrant the charge. But in any view how can it be said that the Whitehouses ought to have gone into that suit when they had no notice of it, no means of notice as required by law; knew nothing of it till it was ended by final decree? True, this Court has held that a proceeding by a commissioner of school

lands to sell cannot be enjoined. In *Moore* v. *McNutt*, 41 W. Va. 905. That was a regular suit and effort was made to stop it before decree, to oust the jurisdiction, when full relief could be had in it. Here the object was not to enjoin the prosecution of the suit, as it had ended, but to enjoin the party from paying the money to redeem under the decree and from restoring the land to the tax books as of good title. Indeed, it was not simply that. It is a suit to cancel a title and declare it invalid. And I will say that it is not perceived why equity will not enjoin action under a decree that clouds a paramount title just as readily as it will enjoin the use of a deed or grant working that result. 6 Am. & Eng. Enc. L. (2nd Ed.) 160, 167. The decree is a muniment of title, no less than a grant, and if it works to becloud the good title, why will not equity restrain its use? The claimant of the inferior title has procured it; it is his muniment of title wrongfully used just like a junior grant. The injunction here sought, not to enjoin proceeding in court, but to restrain payment under it and restoration of the land to the tax books. Equity will in advance prevent acts casting cloud over title. *Moore* v. *McNutt*, cited; 6 Am. & Eng. Ency. L. (2nd Ed.) 159.

This decree being void as shown by its record, is there equity jurisdiction to remove the cloud of that decree? There is a preponderance of judicial decision holding that where a deed or other instrument of title is void on its face, it makes no cloud over title so as to justify jurisdiction in equity; but where it is not void on its face, and evidence outside of it must be found to show its invalidity, there is jurisdiction. There has been great protest against the soundness of the first proposition. Who can be blind to the fact that a recorded deed manifesting hostile claim is an actual cloud over title, though it turn out to be void. Does it not impair market value or wholly prevent sale? Is it not a constant source of disquietude? Who would buy the land under its ban? You require a purchaser to know, or guess, in advance of decision, that the deed is void. It is, in many instances, a most difficult law question whether a deed is good or not good. Everybody is not a judge or lawyer. And the best lawyers and courts differ on such questions. Practically, actually, there is no sound reason in the rule. But the argu-

ment is that the deed falls of its own weight, and shows on its face imperishable evidence of its invalidity, so that there can be no loss of evidence, and that a court of law can pass on the question, and give relief by giving the land to the true owner, disregarding the void deed. This is true; but is this relief as complete, full and adequate as that in equity? The rule is that if it is not, equity will grant such relief. A judgment in ejectment does not cancel the adverse title, but defeats it on the principle of estoppel by record, or *res judicata*. Now, here again may come a grave question on which judges and lawyers may differ, that is, whether the judgment at law does operate to invalidate the deed. Equity, however, cancels the deed in words, leaving no room for doubt, and puts a quietus upon it. In *De Camp* v. *Carnahan*, 26 W.Va. 839, JUDGE JOHNSON said, as I say, that the legal remedy is not complete; that it is a decree in equity, which cancels the deed that gives finality and rest. I have said the weight of authority is the other way; but there is authority to support the position this Court, with unanimity, now lays down. Hogg's Eq. Princ. 80, lays down broadly that "it is wholly immaterial whether the instrument sought to be canceled is void, or only voidable, equity will, in either case, lend its aid." We cannot, however, say that the text is supported by authorities there cited, though the logic is with it. We find that 6 Cyc. 290, lays down the rule as generally prevalent that where the deed is void · on its face equity gives no aid, but says the rule has been severely criticised. 17 Ency. Pl. and Prac. 286, says the rule is not sound, as an "instrument void on its face as a matter of law, or whose invalidity will necessarily appear in proceedings to enforce rights under it, seriously diminishes the market value of the property." That great writer on Equity Jurisprudence, Pomeroy, in his work, section 1399, condemns the rule. He says judges assert the rule, and would not themselves buy land under the void cloud. The great Chancellor Kent said: "I am inclined to think, that the weight of authority, and the reason of the thing, are equally in favor of the jurisdiction of the court, whether the instrument is, or is not, void at law, and whether it be void from matter appearing on its face, or from proof taken in the cause, and that these assumed distinctions are not well founded." *Hamilton* v.

*Cummings*, 1 Johnson Chy. 517. He admitted a conflict of decision, but cited old cases to sustain him. In *Day Co.* v. *State*, 68 Texas 526, we find this strong argument by the court: "A defendant who asserts claim even under an instrument void on its face, cannot be heard to say that it has not such semblance of validity as to create a cloud upon the title to property which it professes to convey that will prejudice the right of the real owner if it be not removed. He cannot be heard to say that others will not attach to it the same degree of faith and credit as a title bearing instrument, which he in good faith gives to it, and that, to the extent of the doubt or cloud, thus cast upon the real title, its holder is injured, or is likely to be injured." Mr. Bigelow, in note to Story's Eq., 13th Ed., section 700, says that as a new question much can be said in support of the position we take. Tiedman's Eq., section 543, criticizes the rule. He says the void deed is a defect of title affecting the property, and that a refusal of "equitable relief inflicts a pecuniary loss" on the owner, and that as long as the deed stands uncancelled it works damage. We have in this state no case, so far as we know, binding us to the unreasonable rule above stated. *De Camp* v. *Carnahan*, cited, so far as it goes, justifies the jurisdiction. The syllabus in *Simpson* v. *Edmiston*, 23 W. Va. 675, looks the same way. *Waldron* v. *Harvey*, 54 W. Va. 608, may be cited for the sound rule, as it holds in point 21 equity jurisdiction to remove cloud by vacating a void judicial sale. We therefore are free to hold that equity has jurisdiction, at the call of one in actual possession under good title, to remove a cloud from his title to land arising from an adverse claim under a deed or other muniment of title, though it be void on its face. In Virginia, *Yancey* v. *Hopkins*, 1 Munf. 419, Judge Tucker asserted the broad proposition of jurisdiction to cancel a tax deed. He did not distinguish a tax deed from other cases. In *Va. Coal Co.* v. *Kelley*, 93 Va. 332, the broad rule given is equity jurisdiction to remove cloud "though the deed be void on its face." So in *Carrol* v. *Brown*, 28 Grat. 791. These were tax deeds, but the court did not isolate them from other cases. Those cases require the plaintiff to be in possession even in tax sale cases, while our cases entertain a suit in equity for a suit to cancel a tax deed, though the party is not in posses-

sion. *Simpson* v. *Edmiston*, 23 W. Va. 675. I cannot see why; but the doctrine is firmly established. For myself I cannot see why equity will annul a tax deed void on its face and not do so in the case of another instrument.

Against equity jurisdiction it is suggested that equity has no right to try conflicting titles to land, and *Freer* v. *Davis*, 52 W. Va. 1, is cited. That case is, that where the plaintiff is not in possession, equity will not entertain a suit to enjoin permanent damage to land, though it be irreparable, where title to the land is in dispute, and there is no independent ground of jurisdiction other than to enjoin such damage; but will grant a temporary injunction against the acts of injury pending a suit at law to settle title, either already instituted or to be brought. In that case the plaintiffs were not in possession, but the defendants were. In this case the plaintiffs were in possession, the defendants not. There is the difference, and that calls for the application of the old principle, vindicated by time, necessity and reason, that one in possession may appeal to the equity court to save his superior title from harm by any claim, pretense of title or other steps by one who has no title, but who is casting cloud and doubt on his title. The old law was that one in possession could not have ejectment against a beclouder not in possession; the common law would not relieve him; but equity stepped in to dispell the cloud, actually present or imminent, and give peace to the better title. And though our present ejectment statute does allow one in possession to sue one not in possession, but claiming title, that statute does not oust equity jurisdiction existing before the Code of 1849. This is the jurisdiction of equity to dispel cloud over title, no where established better than in West Virginia by numerous cases. *Logan* v. *Ward*, 58 W. Va. 366; *Smith* v. *O'Keefe*, 43 *Id.* 172; *Moore* v. *McNutt*, 41 *Id.* 695; *Davis* v. *Settle*, 43 *Id.* 17, pt. 19; Hogg Eq. Princip. 80. Many other cases might be cited. This shows that the suit is one proper for equity; but to successfully maintain the bill the plaintiff must have both actual possession and superior title, that is, the best title. *Logan* v. *Ward*, 58 W. Va. 366; *Harr* v. *Shaffer*, 45 *Id.* 759. We find the plaintiffs to have such title, as will be discussed below.

This is enough to sustain equity jurisdiction, that is, to

remove cloud.    But there is another distinct ground of
equity intervention, and that is the jurisdiction for *quieting*
*title*.   The distinction between the two heads of jurisdiction
is somewhat refined, yet there is a difference.    Equity has
jurisdiction to remove cloud for one in possession under the
better title, though he has not vindicated it at law; but one
who, in one or more actions of ejectment, when it was a mere
possessory action, not as now a real action, had sustained
his title, might call on equity to give him peace by quieting
title.   *Stark* v. *Starrs*, 6, Wall. 402.    Now one trial and
judgment in ejectment is conclusive of title between the
parties, and there is no reason why, when a party defeated
in ejectment keeps on denying its effect and disquieting his
adversary in possession, he should not be stopped from so
doing.    A judgment in ejectment does not, in words, cancel
the instruments of title of the defeated party; it operates only
as *res judicata;* but equity will wipe them away, and thus
quiet title as far as human power could do so.    17 Ency, Pl.
& Prac. 277; *Sharon* v. *Tucker*, 144 U. S. 533.    Possession
seems to be necessary to enable the true owner to maintain
such a bill; but it is not clear that it should be so nowa-
days.    17 Ency. Pl. & Prac. 305; 6 Pom. Eq., sections 723,.
724.    The title of the plaintiffs in this case was vindicated,
the action of ejectment, and the judgment being conclusive,.
gives them equity jurisdiction to save their title from
harassment by the continued assertion of the defeated
title, under the head of jurisdiction to *quiet title* and that
success in ejectment performs the further office, under the
head of jurisdiction to remove cloud, of showing paramount
title.

Counsel for defence says that there was adequate rem-
edy at law, I think, as stated in *Moore* v. *McNutt*, 41 W.
Va. 695, and *Stearns* v. *Hariman*, 80 Va. 48, that though in
possession, plaintiffs could maintain ejectment against the
defendants, though out of possession.    Before the Code of
1849 this was not so; but it is so under our Code.    But the
jurisdiction of equity to remove cloud over title and to
quiet possession was established long before the ejectment
statute as it now is, and the change of the statute giving
wider remedy does not oust the jurisdiction of equity.    And
the title had already been held to be in the plain-

tiffs in one ejectment, and as after it the defendants still claimed, and asserted title to the disquietude of the possession, the equity power was needed to enjoin this harrassment and cancel the title papers on which the defendants based their claim.    So, there can be no question of jurisdiction in equity.

The bill of the plaintiffs presents the cutting of timber as ground for equity jurisdiction.    Our cases hold that equity will take jurisdiction to restrain trespass to realty only where two conditions both exist; namely: "that title must be undisputed or established by legal adjudication; and the injury must be irreparable."    *Cresap* v. *Kemble*, 26 W. Va. 603.    The judgment in ejectment and other allegations of the bill show good title in the plaintiffs; but the other element, irreparable injury, is not present; for our Court has over and again held that cutting timber is not irreparable damage, unless the party is insolvent, and equity makes the injured timber owner look to the common law in an action for damages.    *Loyd* v. *Lyon*, 57 W. Va. 217; *Marcum* v. *Marcum*, 57 W. Va. 285.    It seems to me that this doctrine is now, always has been, unsound.    Timber is of such inestimable value for building and repairing houses and fences, for fuel and other purposes.    It takes half a century or more to regrow it when once removed.    A trespasser, without title, cuts it to-day, to-morrow and on.    Must you sue him in suit after suit for each day's or week's depredation?  Or will you wait until he gets through, then have a long law suit? The timber is gone forever, the party has become insolvent. The remedy is not full and adequate.    Still, it is abundantly settled that equity will not interfere merely to stop cutting timber.    There being no allegation of insolvency this is not ground for equity jurisdiction under the above doctrine, and if jurisdiction rested alone on injunction to prevent cutting timber, it would not give it; but there is jurisdiction under other heads, removal of cloud and quieting title.    Cutting timber, the true owner being in possession, disturbs and disquiets that possession and damages the land, as it is a violent invasion of the land.    Nothing could more disquiet.    This differentiates this case from the rule just stated.    And under the head of removal of cloud cannot there be such injunction as incidental to that relief, and to effectuate it?    I would nar-

row the objectionable rule as much as consistency with those cases would allow. Therefore, there is no error in the decree in enjoining the cutting of timber.

As to title. That of the plaintiffs is the older. Their title under the Hollingsworth grant dates from 1796; that of the defendants under the Middleton grant from 1865. That is enough to settle the title. The defendants cannot appeal to the Lockhart grants as older and excepted from the Hollingsworth grant. Those parts of the Lockart 300 and 500 acre tracts within the plaintiffs' 2,500 acre tract are excepted out of it, not claimed by the plaintiffs, not recovered by them, as they recover only what is in their deed for the 2,500 acres. Moreover, the defendants do not claim derivatively from the Lockhart grants. They were lost to the state by forfeiture—ended, and the land can be claimed only under the Middleton grant by the defendants. As to the Lockhart 200 acres, it was not excepted out of the Hollingsworth grant, and that grant conveys title to it. If Lockhart yet owned it or the defendants, the plaintiffs would get it by the statute of limitation; but why remark this, when the defendants do not own the Lockhart under its old grant? And Middleton's right under his grant would be barred and pass by the statute to the plaintiff's; but why this remark, since an elder claim does not need the statute? Only an inferior title needs it. The plaintiffs had had possession since 1865. The proof shows the fact. It seems to be thought by the defendants that the plaintiffs assert that when the Lochart senior tracts were forfeited, as stated in the answer, the forfeiture enured to the benefit of the Hollingsworth grant, though the Lockhart tracts were excepted from it. No such claim is set up, nor could it be, because the Lockhart tracts that were excepted from the Hollingsworth grant never were a part of it, and could not go to its benefit by forfeiture; forfeiture could not spread the Hollingsworth grant over those excepted tracts. *Logan* v. *Ward*, 58 W. Va. 366. The plaintiffs' title included none of them but the 200 acres, it being within, and not excepted from the Hollingsworth grant. As to the 2,500 acres of the plaintiffs, it was the elder title, and need not appeal to the forfeiture of the Middleton grant; but when it was forfeited, it passed instanter to the owners of the 2,500 acres under the consti-

tution.    No redemption could affect the right of the plaintiffs
so acquired by forfeiture.    It is proven that the owners of
the 2,500 acres were in possession and paid taxes since 1865.
The Middleton was drowned in the plaintiff's title, added to
it, showing that the colorable title under the Middleton grant
was lost to the defendants and passed  to the owners of  the
2,500 acres, the plaintiffs in this suit.

Another reason why the title of the plaintiffs is superior
to  that of the defendants is,  that  the  judgment for the de-
fendants in ejectment is conclusive as *res judicata* to show the
superiority of the  title of the defendants in that suit and the
plaintiffs in this suit.    The declaration claimed a tract of
1,137 acres and described it as in  the Middleton grant.    The
plaintiffs were Robert Patton, and Middleton's executor and
the heirs and devisees of Byram, under whom the defend-
ants in this case claim.    The  defendants in  that suit were
tenants of the Whitehouse heirs, and those heirs, except
one dead, are plaintiffs in this suit.    The Middleton grant
and deeds carrying down its title to plaintiffs in the ejectment
were given in evidence by the plaintiffs, and the Hollings-
worth grant and transfers bringing title down to the defend-
ants were in evidence.    Thus, that ejectment was an open
contest between the self same titles for  the  self same land,
between the same parties and  privies  in  estates  as  are in-
volved in this chancery suit.    It will  not  do to say, as the
answer says, that the suit was against squatters, when it was
against the tenants of the Whitehouses and the  Whitehouses
themselves.    It won't do to say that the  ejectment was lost
because the court held that it ought to have been in the name
of the state, because Middleton's land had  been forfeited,
when the trial  record does not show that forfeiture entered
into the trial at all, and it appears that at its date there was no
forfeiture perfected, and the land had been redeemed.
The answer admits that the plaintiff sued on the Middleton
title to recover the land on its strength.    That judgment is
clearly conclusive to repel the Middleton and prove its in-
feriority to the Whitehouse title.    No matter what the
ground of decision it concludes the claim of the defendants.
The record, however, proves it to have been a trial of the two
competing titles.

It is assigned as error that the court did not pass on an ex-

ception to a deposition. Counsel accepted service of notice, and appeared, and after several questions had been asked, excepted because notice was given only three days before, not allowing time to communicate with his client. But we do not know where the client resided. An exception stating such fact is not evidence. We cannot see whether the notice of three or four days was enough. Again, it was the duty of the defence to show the court by evidence where the clients lived, and move to suppress the deposition, so that if suppressed, it could be retaken. And as to exceptions to questions. The court was not bound to pass on them without a request. No motion to suppress was made. *Vanscoy* v. *Stinchcomb*, 29 W. Va. 263; *Long* v. *Perine*, 41 *Id*. 314. Barton's Chy., section 223, says that exception for want of notice or other irregularity in depositions comes too late after hearing has begun. So says Hogg's Eq. Proced., section 503. *McCandlish* v. *Edloe*, 3 Grat. 330 is distinct authority for this. 6 Ency. Pl. & Prac. 591. In a law case the exception must be before the jury is sworn. *Jones* v. *Lucas*, 1 Randolph 268.

Complaint is made that the defendants are enjoined from paying money under the order of redemption *in toto*, when there was some of their land not involved with the plaintiffs' land. The proposition was to redeem 788 acres, part of the Middleton land. Certain it is that the 788 acres lie wholly or partly in the plaintiffs' land. How can we say that it is not all in the plaintiffs' land. We do not know its location, so as to say that any part of the land to be redeemed is outside the plaintiffs'. Aside from that sufficient consideration, there stood that void order of redemption. It was to be used to the prejudice of the plaintiffs. It could not be divided. As it was to be used to their prejudice, could they not wholly enjoin its use? And it cannot harm the defendants as to any part of the 788 acres not in the plaintiffs' land, or prevent a proceeding to redeem it.

We affirm the decree.

*Affirmed.*