# CHARLESTON.

IGUANO LAND & MINING COMPANY *v.* JONES *et al.*

Submitted September 9, 1908.   Decided February 2, 1909.

1.  QUIETING TITLE—*Grounds of Relief—Cloud on Title.*
    Equity will grant relief by way of enjoining the commission of such acts as will constitute, when completed, a cloud upon title, in all cases where it would have jurisdiction to remove the cloud created by the completion of the acts which are sought to be enjoined.   (p. 65.)

2.  SAME—*Title of Plaintiff.*
    Before relief will be granted upon a bill to remove cloud from title plaintiff must be in possession of the land and must show that he has good title thereto; and in order to claim successfully the benefit of a deed made to his remote grantor which operates only as color of title, he must connect himself by proper conveyances with such remote grantor, and must show possession by himself and those under whom he claims, for such length of time as will operate to ripen his color of title into a good and sufficient title.   (p. 69.)

3.  JUDGMENTS—*Judgments Conclusive—Service or Appearance—Judgment on Merits.*
    In order for a former adjudication, made by a court of record, to operate as a bar to another suit, the record of such former suit must show service of process upon, or appearance by defendant, and judgment or decree upon the merits.   (p. 73.)

4.  SAME—*Conclusiveness—Matters in Issue—Parol Evidence.*
    Parol evidence, when not inconsistent with the record and not impugning its verity, is admissible to prove that a former suit or action had in a court of record between the same parties, or their privies, in which judgment was rendered on the merits,

involved matters in issue in the suit or action on trial, and were necessarily determined by the first judgment or decree. (p. 71.)

5. CORPORATIONS—*Actions—Denial of. Corporate Existence—Sufficiency.*

A mere recital in the answer of a defendant, to a bill filed by a corporation, although the answer is sworn to, referring to plaintiff as "a pretended corporation", is not such a denial of the existence of the corporation under section 41, chapter 125, of the Code of West Virginia as puts the matter in issue. (p. 73.)

Appeal from Circuit Court, Putnam County.

Bill by the Iguano Land & Mining Company against R. A. Jones, Mary Patton Hudson, and others. Decree for complainant, and Mary Patton Hudson appeals.

*Reversed and Dismissed.*

SIMMS, ENSLOW, FITZPATRICK & BAKER, for appellant.

J. H. NASH and BROWN, JACKSON & KNIGHT, for appellee.

WILLIAMS, JUDGE:

This is a suit in equity brought in the circuit court of Putnam county by the Iguano Land & Mining Company, a corporation, against R. A. Jones and others for the purpose of removing, as a cloud upon plaintiff's title to a tract of 2500 acres of land, the claim of title asserted by the defendants to a portion of said 2500 acres, and for the purpose of enjoining said defendants from asserting title thereto and from taking further steps to redeem their title which is admitted to be forfeited, and to enjoin them, their agents and employes, from taking possession of, or cutting timber upon, any part of said 2500 acres of land claimed by plaintiff. The defendants demurred to the bill and the demurrer was overruled; later they filed their answer practically denying all the material allegations of plaintiff's bill.

On the 23rd day of August, 1899, a temporary injunction was awarded according to the prayer of the bill. A survey was made under order of court, and the report, accompanied by maps made of such surveying as was done by the surveyor, constitutes a part of the record.

The deposition of Jas. L. McLean was taken on behalf of the plaintiff, and the cause came on to be finally heard on the 23rd day of February, 1902, when a decree was made perpetuating

the injunction.   From this decree one of the defendants, Mary
Patton Hudson, appealed.

The record discloses the following facts:   That the plaintiff
claims title immediately from Samuel Hollingsworth who was the
patentee of the Commonwealth of Virginia of a tract of 100,000
acres of land situate on Pocatalico river, a tributary of the
Kanawha River, in what was then Greenbrier County.

This tract passed from Hollingsworth by deed to Mathias
Bruen who devised the same to different persons, among whom
were plaintiff's remote grantors.

In 1850 this 100,000 acres of land was partitioned among
Alexander McWhorter Bruen, Henry Whitehouse and Frances D.
Bruen and Mary S. Bruen, tenants in common, by which parti-
tion deed Alexander McWhorter Bruen became the owner in sev-
eralty of the 2500 acres claimed by plaintiff.   On the 2nd day of
March, 1855, Alexander McWhorter Bruen and wife conveyed
this 2500 acres to E. G. Tyler, and on the same date said Tyler
executed a mortgage upon the same to the said Alexander Mc-
Whorter Bruen to secure the payment of $22,500.

On the 1st day of July, 1875, E. B. Knight, special commis-
sioner, made a conveyance of this land to E. W. Bond and J. L.
McLean, in the proportion of two-thirds to Bond and one-third
to McLean.   This deed recites that it was made pursuant to
decrees made in the cause of A. M. Bruen against E. G. Tyler
and others in the circuit court of Putnam county rendered on
the 16th day of November, 1866, the 11th day of November,
1868, and the 11th day of June, 1869, the last named decree con-
firming the sale, and a decree on the 3rd day of April, 1875,
appointing said commissioner to make the deed.   Witness Mc-
Lean states in his deposition that he produced for the inspection
of the defendants' counsel at the time of the taking of his deposi-
tion a certified copy of the will of Mathias Bruen, certified copies
of deeds to plaintiff, and also one original deed to E. G. Tyler,
for the 2500 acre tract; but this original and these copies do
not appear in the record.   McLean's deposition also proves that
the plaintiff and those under whom it claims have been in
actual and continuous possession of said 2500 acres of land since
1865, and have paid all the State and other taxes charged and
chargeable thereon since the year 1865.

Concerning the defendants' title to 1137 acres of land, a small

portion of which extends into the boundary of the 2500 acres claimed by the plaintiff, it appears that in 1865 there was granted to H. O. Middleton by the State of West Virginia, by metes and bounds, a tract of 1137 acres, all of which lies wholly within the bounds of the 100,000 acre Hollingsworth grant, and a small portion of which extends into plaintiff's 2500 acre tract.

The 100,000 acre Hollingsworth patent is an inclusive and exclusive grant, and from its operation certain small surveys, made by a man by the name of Lockhart, were expressly excepted; one tract being a 500 acre survey, another 400 acres, and still another 300 acres. It appears from the record that there was another small survey of 200 acres made by Lockhart which joins his 300 acre survey on the north, a small portion of which is included in the bounds of plaintiff's 2500 acres. This survey is older than the patent under which plaintiff claims title, but it is *not one of the excepted surveys;* it is not mentioned or referred to in the grant to Hollingsworth.

These three excepted surveys, viz: 300, 400 and 500 acres, and also the Lockhart survey of 200 acres were all, on the 22nd day of July, 1784, granted by the Commonwealth of Virginia to Henry Banks, the remote assignee of Lockhart. The Bank's title is admitted to have been forfeited to the State for non-entry on the land books and non-payment of taxes before the date of the grant of the 1137 acres was made to H. O. Middleton. Reference to these several grants to Banks will assist very materially in determining their relative location. It appears from the grant of the 500 acres that it adjoins the 400 acres, and from the grant of the 200 acres that it joins the 300 acres on the north; and the 400 acres is described as lying on the northwest branch of Pocatalico, a branch of the Great Kanawha about three miles north of the mouth of the Pocatalico, and the 300 acres is described as lying on the northwest fork of the northwest branch of the Pocatalico, a branch of the Great Kanawha. The 500 acres is also described as lying on the northwest branch of the Pocatalico. The entry of the 300 acres recites that it is near his 400 acres. From these descriptions it appears that all four of these surveys lie in the same immediate vicinity and that the 300 and 200 acre tracts join, and that the 400 acre and 500 acre tracts join, but are not all contiguous. It is claimed by the defendants that H. O. Middleton embraced these excepted

surveys within the bounds of the 1137 acres for which he obtained a grant in 1865; but it appears from the survey and map filed in this cause that the 1137 acres failed to include about half of the 500 acre survey and also about half of the 300 acre survey; the 400 acres excepted is not located, nor does it appear from the record whether it is embraced within the bounds of the 1137 acres or not. Middleton failed to enter his land on the land books of Putnam county, and failed to have the same assessed with taxes until the year 1874, when it first appears on the land books charged to Henry O. Middleton for the taxes of said year and for the preceding years back to 1869, inclusive. But this back tax does not appear to have been paid. In 1875 and 1876 it appears on the land books in the name of Robert Patton under whom the defendants to this suit claim, and was returned delinquent for the non-payment of taxes for those years. On the 5th day of November, 1877, it was sold for such delinquent taxes and purchased by the State. On the 10th day of November, 1879, it was again sold in the name of Robert Patton, and was again purchased by the State, and does not thereafter appear on the books of said county charged in the name of either Middleton, Patton or any other person. In 1881, Nancy Patton, assignee of Robert Patton, was permitted to redeem by payment of back taxes between 1875 and 1881, inclusive; but she failed to enter it on the land books and it again became forfeited.

It is not shown that the defendants, or those under whom they claim, are, or ever have been, in possession of any part of the 1137 acres involved in this suit. It further appears from the map and surveys in this cause that the entire portion of the 1137 acres lies within two contiguous tracts of 2500 acres each, both being parts of the 100,000 acre Hollingsworth grant. About nine-tenths of this 1137 acres, which is in the form of a triangle, lies within a tract of 2500 acres now owned by W. F. Whitehouse and others, and so far as the defendants' title to this much of the 1137 acres is concerned it was adjudicated and settled by this Court in the suit of W. F. Whitehouse and others against these same defendants, and is reported in 60 W. Va. 680. And the principles enunciated in that case are applicable in a large measure to this case, but do not necessarily control it. Because the two suits are similar in many respects, and differ widely in other and material matters. The plaintiffs in that suit claimed

under identically the same title, down to and including the partition deed made by Miller, commissioner, as the one under which the plaintiff in this case claims; the evidence in the two causes was nearly the same; and the pleadings in the one case are almost a *fac simile* of the pleadings in the other. The conclusions of the Court were right in the other case; and if the facts alleged in plaintiff's bill were sufficiently proven the logic used by BRANNON, J., in the *Whitehouse Case* would apply equally as well to this case. But, as we shall presently point out, there is a wide difference between the two cases on material points.

Proceeding, now, to the consideration of the points relied upon by defendants' counsel as errors committed by the lower court, it is noted that the first point raised is that the court erred in permitting the filing of plaintiff's bill while a proceeding was pending in the same court in the name of the State of West Virginia against the owners of the 1137 acres, Middleton land, for the purpose of sale, or redemption. It is insisted that the plaintiff to this suit should have come into that proceeding by petition. A complete answer, we think, to this objection is given by BRANNON, J., in the *Whitehouse Case* above referred to, which is, that said proceeding was instituted at the request of the defendants in the present suit; that it was very irregular; that there was no order of publication as required by chapter 105 of the Code; that the plaintiff to this bill was not made a party to that proceeding, either by name, or by general description as unknown claimants of the land, and that the petition, or bill, in said case and the order permitting defendants to redeem, were all had and completed in one day. Consequently, there was no opportunity given this plaintiff to come into that suit before the final decree permitting redemption had been entered.

The second point insisted on is, that the plaintiff had a plain and adequate remedy at law. This point is also settled by the *Whitehouse Case,* provided the plaintiff has shown sufficient title to the land claimed in its bill. How can it be said that plaintiff had an adequate remedy at law, if it has valid title and is in actual possession? It might be admitted that the irregular proceedings in the name of the State, had at the instance of the defendants and for the purpose of permitting them to redeem from the State the forfeited Middleton title, could have no effect to divest the plaintiff of its title, and that such

proceeding could, not have the effect to disturb them in the peaceable enjoyment of their possession; still, it must be admitted that such proceeding had the effect to create a cloud upon plaintiff's title and, very likely, to materially affect its market value. Why, therefore, was not a court of equity open to give it relief by way of enjoining the defendants from any further proceedings, the effect of which was undoubtedly to becloud and discredit its title? We think equity clearly has jurisdiction in such a suit.

This Court has frequently held that where a party is in possession of land, holding it under a good legal title, equity will take jurisdiction of a suit by him to remove a cloud from his title. *Moore* v. *McNutt,* 41 W. Va. 695; *DeCamp* v. *Carnahan,* 26 W. Va. 839; *Smith* v. *O'Keefe,* 43 W. Va. 172; *Hitchcox* v. *Morrison,* 47 W. Va. 206; *Holderby* v. *Hagan,* 57 W. Va. 341; *Whitehouse* v. *Jones,* 60 W. Va. 680. No principle of equity jurisdiction seems to be any more firmly established by adjudications than this.

Will equity grant relief by means of injunction to stop, or prevent, acts which, if fully accomplished, would constitute a cloud on title? We think this question has also been answered in the affirmative by former decisions of this Court.

*Holderby* v. *Hagan, supra,* which was a suit to enjoin the prosecution of an ejectment suit; and *Moore* v. *McNutt, supra.* This last named case was a suit by Moore, the owner of land, against McNutt, Commissioner of School Lands, to enjoin him from further proceeding to sell, as school lands, certain tracts of land that lay within the plaintiff's boundary, and claimed by the School Commissioner to have been forfeited in the name of junior grantees; thus presenting a case very similar to the one now under review. The Court in the syllabus says: "Equity will exercise jurisdiction in advance to prevent acts which will cast a cloud over title to real estate, on the same principles on which it removes clouds already resting on such title."

This doctrine of equity jurisdiction in such cases was again announced in *Whitehouse* v. *Jones,* 60 W. Va. 680. We think it correctly expresses the law. Why should equity withhold relief to prevent a thing which it can be clearly seen will, if accomplished, create a cloud which equity will remove? Why can not equity be invoked to prevent that which it would cer-

tainly undo, if allowed to be accomplished? There seems to be no valid reason why equity should not give relief by preventing a wrong in all cases wherein it has power to cancel the wrong if done; and we entertain no doubt on this point.

The defendants claim that the demurrer to the bill should have been sustained because the bill on its face, as counsel contend, shows that plaintiff's original claim to at least a part of the land in dispute was based upon the forfeiture of the senior patents for these small surveys, which were excepted from the 100,000 acre grant, and which forfeiture enured to the benefit of the junior patent, to-wit, the Hollingsworth patent. We do not understand the plaintiff to make this claim in its bill. These smaller surveys having been expressly excepted from the operation of the large grant, of course, did not fall into the lap of the larger grant upon their forfeiture; they were no part of the land granted to Hollingsworth. Consequently, if plaintiff claims title to any of the aforesaid excepted tracts, it will have to show title thereto derived from some source other than the Hollingsworth grant before it can obtain the relief prayed for as to those tracts. But, on the other hand, the defendants make no pretense of a claim to the land embraced in any of those excepted surveys by virtue of the grants therefor issued to said Banks. Their title starts with the grant made by the State of West Virginia to H. O. Middleton in 1865, which grant they supposed was intended to cover the land included in these smaller excepted surveys, although there is nothing in the record to show that such was Middleton's purpose in obtaining the grant. It is shown by the map filed in this cause that this Middleton grant covers only about half of the 500 acres, and about half of the 300 acres and the greater part of the 200 acres, which last named survey, as before said, is not one of the excepted surveys. The Middleton survey calls for 1137 acres; consequently a very large portion of it is laid down upon land granted to Hollingsworth. The defendants' title is admittedly forfeited, and so much of their land as did not cover the excepted Lockhart tracts, and as lay within the bounds of plaintiff's 2500 acres, was by the forfeiture vested either in the State, or in plaintiff. We have only, so far as concerns the present suit, to inquire into the status of the title to so much of the 1137 acres as lies within this plaintiff's boundaries. What is the status of defend-

ants as to this part of their land?  As .before stated, no part of
the excepted Lockhart surveys extends into this plaintiff's bound-
ary.  But a small portion of the 1137 acres does extend into it;
then, as to this part, the defendants' title, being a junior title,
could not avail them as against plaintiff's older title, even if
defendants' title were not forfeited, provided, however, the plain-
tiff has shown itself to be the rightful owner of the Hollings-
worth title.  The defendants do not claim ever to have been in
possession of any part of the land which they seek to redeem;
but, on the other hand, plaintiff proves possession, by itself and
those under whom it claims, continuously since 1865, and also
that it has paid all taxes on the 2500 acres since that year.
These circumstances are greatly in plaintiff's favor and if it
had shown sufficient title to the land, they would determine
the case in its favor.  But has it proved such title as the law
in such cases requires?

So far we have proceeded upon the theory that plaintiff has
established a good paper title, thereby connecting itself with the
grant to Hollingsworth.

But the defendants deny plaintiff's title, and contend that
certain deeds referred to in plaintiff's bill and relied upon·as
evidence of its title do not operate to convey title.  It therefore
becomes the duty of plaintiff to establish title by proof.  What,
then, is the status of plaintiff in the event it has not shown a
good unbroken chain of paper title going back to the Common-
wealth?

The plaintiff presents two deeds in its chain of title made
by commissioners of courts and the only evidence found in the·
record of the authority of said commissioners to make such
conveyances is the recitals contained in the deeds themselves.
One is the partition deed made by S. A. Miller, commissioner,
bearing date May 16, 1850, partitioning this land'among the
heirs and ldevisees of Mathias Bruen; the other is the deed
made by E. B. Knight, special commissioner, to E. W. Bond and
J. L. McLean, bearing date July 1, 1875.  Defendants deny
that these deeds conveyed any title.  It is true these deeds are
not accompanied by any part of the record of the suits in which
the deeds recite that authority was conferred by decrees to make
them, and, their effect as conveyances being denied by defend-
ants, are therefore not proper evidence of title.  *Waggoner* v.

*Wolf,* 28 W. Va. 820; *McDodrill* v. *Pardee & Curtin Lumber Co.,* 40 W. Va. 564. Nevertheless, these deeds serve as color of title; they grant the lands by metes and bounds, and describe it by location. It may be also noted here that neither of these deeds makes any exception from the operation of the conveyance of any land lying within the exterior boundaries of the 2500 acres claimed by this plaintiff. And even if the plaintiff had no older title than that conferred by the deed of E. B. Knight in 1875, yet having been in possession of a part of the land described therein, and having paid all the taxes charged and chargeable thereon since that time, these circumstances would put the plaintiff in the first class of persons described in section 3 of Article XIII. of the Constitution of West Virginia, and would give it the benefit of the defendants' forfeited title. Such conditions would invest it with as good and as indefeasible a title as if its chain had been properly connected up with the grant to Hollingsworth, provided it has connected itself with this color of title. If it has done so, such a title will support its bill. But does plaintiff properly connect with the E. B. Knight deed?

Plaintiff alleges "that it is seized and possessed in fee" of the 2500 acres; that title passed to it through the deed from Miller, special commissioner, to Alexander McWhorter Bruen, and from him to E. G. Tyler, and that it passed from him by a "regular chain of title to your orator." It does not allege by what deed, or deeds it passed to plaintiff.

The defendants in their answer deny that the deed made by Miller, commissioner, "could or did convey or vest any title in Alexander McWhorter Bruen or any other person whomsoever in or to the said 2500 acres," or that "those pretending to claim under him (E. G. Tyler) or the complainants in this cause have ever acquired any title whatsoever under or by virtue of such conveyance or any other conveyance or means." This denial, while somewhat general, seems to be no more indefinite than plaintiff's allegation concerning its source of title, and is certainly a sufficient denial to put plaintiff upon proof of its title. Has it proved it? It exhibits no deed, or certified copy of deed conveying title to it, from any person. Plaintiff took the deposition of J. L. McLean, but no deed or certified copy conveying title to plaintiff is filed with his deposition; and none

appears in the record. At the taking of this deposition witness was asked to produce for the inspection of counsel, but to be retained by witness "subject to the order of the court," any deeds or certified copies of deeds, conveying the 2500 acres of land to the plaintiff. In answer to this request he says, after naming other papers produced: "I have produced * * * certified copies of deeds conveying title to another 2500 acres, part of said 100,000 acres, to the Iguano Land and Mining Co." Witness does not so much as name the grantors in said deeds; nor does it anywhere appear in the record who were the grantors to plaintiff. These deeds were only certified copies; presumably they were from the records of Putnam county, where the land lies, and where witness was at the time he was testifying. Why, then, did not plaintiff have witness to file them and make them a part of the record? If afterwards lost they could have been easily supplied. Was it because of some fatal defect in them; or was it simply because plaintiff thought it unnecessary to file them? We do not know. How could the court know that they were properly executed, or that they had been properly acknowledged for recordation, so as to permit a certified copy as evidence in place of the original, without having seen them? The court was the judge, in this case, of the sufficiency of the evidence, and it could not pass on this question without inspecting the deeds. The notary had no power to pass upon the sufficiency of the deeds; and certified copies having been shown to exist it was necessary to make them parts of the record in order to prove title. Parol evidence on this point was secondary, and therefore inadmissible evidence, no reason being shown making it necessary to resort to it.

Plaintiff having claimed to have title by deed, the deeds themselves, or, under our statute, certified copies thereof, were the best evidence to the title. 1 Greenleaf on Evidence, sec. 81 (h); *Id.* sec. 84; 2 Wigmore on Evidence, sec. 1172; *Id.* sec. 1192; 17 Cyc. 465; *Id.* 485; *Millers* v. *Catlett,* 10 Grat. 477; *Hubbard* v. *Kelley,* 8 W. Va. 46; *Lewis* v. *Burns,* 122 Cal. 358; *Cain* v. *Busby,* 30 Ga. 714; *Reich* v. *Berdel,* 120 Ill. 499; *Grffith* v. *Huston,* 7 Mar. (Ky.) 385; *Brakett* v. *Evans,* 55 Mass. 79; *Thompson* v. *Richards,* 14 Mich. 172.

But it may be thought that inasmuch as no exception was taken to this mode of proof, and because no order of court

appears in the record requiring such certified copies to be filed, it is now too late to raise the objection. But we do not think so. This parol evidence is insufficient. It fails to prove material facts. It does not state who the grantors were in those deeds. It is not known whether they were privies in estate with the Alexander McWhorter Bruen heirs or not; nor is it even shown that the deeds were properly executed so as to make them good as conveyances.

Plaintiff having alleged that it claims title under the commissioner's deeds, hereinbefore referred to, it became necessary to connect itself with this title by proper conveyances. It was a fatal omission not to do so. The record fails to show any privity of estate between the plaintiff and the grantor through whom it alleges to have title.

It is assigned as error that the defendants were enjoined from redeeming that part of their land which counsel say lies wholly without the boundary of the land claimed by the plaintiff company. But, as to this assignment, counsel are clearly under a misapprehension as to the fact, because the survey and report made in this case show that the whole of the Middleton survey lies within the boundaries of the two contiguous 2500 acre tracts; the one claimed by this plaintiff and the other by the Whitehouses, and both being parts of the Hollingsworth 100,000 acre grant.

Plaintiff pleads, in bar of defendants' title, an action of ejectment brought by Robert Patton and others against Russell Landers, Albert Dean and others, in which a verdict and judgment was rendered for the defendants in the year 1883 by the circuit court of Putnam county. The record of this ejectment suit is made an exhibit with plaintiff's bill. A bill of exceptions was taken in that case and was made a part of that record. But no writ of error was ever granted to that judgment. The bill of exceptions is only a skeleton in form, and simply refers to many deeds and papers that were used as evidence at the trial, but does not contain them. Enough, however, is contained in the skeleton bill of exceptions to show that the same titles were involved in that suit that are in issue in this one, and that the land described in the declaration is the same identical land described in the Middleton grant of 1865. The defendants in this suit are privies in estate to the plaintiffs in the ejectment suit.

But, so far as that suit concerns the title of the plaintiff in this suit to the 2500 acres claimed by it, it seems to lack one of the essential elements necessary to constitute *res judicata*.

The appellant assigns as error that the lower court permitted oral proof in explanation of the record in the ejectment suit. Was it error? Under the law of this state the only plea permissible to ejectment is "not guilty." This plea is very general in its nature, and comprehensive in its scope, and matters are often put in issue under it which, in other forms of action, would. have to be pleaded specially. In such cases the record, unaided by any explanatory evidence, rarely discloses the real matters that were involved in the issue, and for this reason evidence is admissible in explanation of, but not in contravention or contradiction of the record, for the purpose of explaining what were the real matters litigated. 2 Black on Judg., sec. 614; *Id.* sec. 624; *Russell* v. *Place,* 94 U. S. 606; *Wilson's Exor.* v. *Deen,* 121 U. S. 525; *Dunlap* v. *Glidden,* 34 Me. 517; *Rogers* v. *Libby,* 35 Me. 200; *Gage* v. *Holmes,* 12 Gray (Mass.) 428; *Burlew* v. *Shannon,* 99 Mass. 200; *Carleton* v. *Lombard, Ayres & Co.,* 149 N. Y. 137; *Whitehurst* v. *Rogers,* 38 Md. 503; *Bottorff* v. *Wise,* 53 Ind. 32; *Leopold* v. *The City of Chicago,* 150 Ill. 568. Consequently, on the theory of plaintiff that the judgment in ejectment was *res judicata* as to the defendants in this suit, it was proper to admit the oral testimony of witness McLean to prove the map used as evidence at that trial for the purpose of identifying the land in controversy; to prove which one, or ones, if any of the defendants in the ejectment suit, were in possession of the 2500 acres now claimed by this plaintiff; and to prove the fact that the plaintiffs in the ejectment suit then claimed the land by the same title by which the defendants, their privies in estate, now claim it. Such testimony is only in aid of the record. But the fact that the land involved in both suits is identical, is also shown by a comparison of the two descriptions given of it in the declaration and in the answer to the. bill; and the fact that defendants' grantors claimed under the same source of title in the ejectment suit that defendants themselves now claim under, is also fully established by a comparison of the bill of exceptions taken at the ejectment trial with the allegations contained in defendants' answer. The identity of both the *corpus* of the land, and the title by which it was

claimed, being thus established by the record, the admission of the testimony of witness McLean on this point, even if it could be regarded as error at all, would not be prejudicial to defendants.

This brings us to a consideration of the question of *res judicata*. Does it apply in this case? This Court applied it in the *Whitehouse Case*. Are the facts in the two suits the same? We think not. While they are similar in very many respects, and identical in others, yet there is an essential and material difference upon a vital point which prevents the application of the principle here. This difference is the entire want of an issue between the plaintiffs in the ejectment suit and any person claiming any part of the 2500 acres of land now claimed by the Iguano Land & Mining Company.

The ejectment suit must have involved the same matters now in issue; must have been between the same parties, or their privies; and there must have been a final adjudication upon the merits, before it could operate as a bar to defendants here. Looking to the record in that suit we find that the plaintiffs declared against a number of persons who were alleged to be in possession of the land covered by the Middleton grant; but by reference to the testimony of J. L. McLean it is found that only one of those defendants, to-wit, Albert Dean, was in possession of any part of the 2500 acres claimed by plaintiff. The others were on the 2500 acres owned by the Whitehouses. It will be remembered that the partition of the 100,000 acres among the Bruen heirs and devisees had been made long before that suit. The record further discloses that Albert Dean was not served with notice; that he did not appear and plead; nor does it appear that his lessors were substituted in his stead as defendants. It is true that witness McLean says that he (McLean) appeared and defended the action. But so far as this testimony is intended to show that there was an issue between those plaintiffs and any one representing the title to the 2500 acres claimed by the plaintiff in this suit, it is in contravention of the record, and is therefore inadmissible. It, therefore, follows that the principle of *res judicata* does not apply in this case. This does not conflict with the opinion on the subject expressed by the Court in the *Whitehouse Case*. Because in that case the record in the ejectment suit shows that the parties who were in pos-

session of the other 2500 acre tract were served with notice and pleaded; and, furthermore, that the Whitehouses were, by the order of the court, substituted as defendants.

It is assigned as error that the deposition of J. L. McLean was read as evidence over the objection of defendants, because the time of the notice was too short to enable clients to communicate with their counsel. It does not appear how far counsel resided from clients; or that the time given was unreasonably short. Notice to take the depositions was accepted by counsel for defendants on the 25th day of March, and the taking was commenced on the 28th, and concluded on the 30th day of March, 1901. A complete answer to this objection, however, is found in the fact that another one of counsel for defendants appeared, and is noted as counsel for Mary P. Hudson and some others of the defendants, and cross-examined the witness on the 28th of March. Mary P. Hudson being the only one who appeals, it matters not whether, or not, he appeared for all the defendants.

Exceptions were noted to a number of questions and answers, some of which may have been irrelevant, immaterial and even improper, evidence. But this Court will not presume that the circuit court considered such parts of the evidence as was improper, if there is sufficient proper evidence to sustain his conclusion.

Counsel in their brief insist that the answer denies that the plaintiff is a corporation and that the record furnishes no proof of its existence. The only allegation in the answer that has any bearing on this point is the following: "That it is not true that the so-called Iguano Land and Mining Co., a pretended corporation, either as a corporation or any of its members, assignors or vendors are or ever were possessed in fee simple or otherwise of a certain tract of land consisting of 2500 acres" &c. We do not think this amounts to such a denial of the plaintiff's existence as a corporation as the statute requires. So far as it refers to the plaintiff's not being a corporation it is a mere recital, and not a denial; it is not sufficient to raise an issue on this question, under chapter 125, section 41, Code of West Virginia.

For the reasons herein stated the decree, rendered in this cause by the circuit court of Putnam county on the 23rd day of September, 1902, is reversed, and this Court will render such decree

as the lower court should have rendered, dissolving the injunction and dismissing plaintiff's bill.

*Reversed and Dismissed:*